[987 NE2d 233, 964 NYS2d 456]

In the Matter of KARRI BECK-NICHOLS, Respondent, v CYNTHIA A. BIANCO, as Superintendent of Schools of the City School District of the City of Niagara Falls, New York, et al., Appellants.

In the Matter of ROXANNE ADRIAN, Appellant, v BOARD OF EDUCATION OF CITY SCHOOL DISTRICT OF CITY OF NIAGARA FALLS et al., Respondents.

In the Matter of KELI-KORAN LUCHEY, Respondent, v BOARD OF EDUCATION OF CITY SCHOOL DISTRICT OF THE CITY OF NIAGARA FALLS et al., Appellants.

Argued January 8, 2013; decided February 19, 2013

**POINTS OF COUNSEL**

*Hurwitz & Fine, P.C.*, Buffalo (*Michael F. Perley, Todd C. Bushway, Cassandra A. Kazukenus* and *Angelo Massaro* of counsel), for appellants in the first above-entitled proceeding. I. Under either the substantial evidence or arbitrary and capricious standard of review, the Niagara Falls Board of Education's decision was rationally based and should be upheld. (*Matter of Jennings v New York State Off. of Mental Health*, 90 NY2d 227; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222; *Matter of Silberfarb v Board of Coop. Educ. Servs., Third Supervisory Dist., Suffolk County*, 60 NY2d 979; *Matter of Bevacqua v Sobol*, 176 AD2d 1; *Sheerin v New York State Div. of Substance Abuse Servs.*, 844 F Supp 909; *Matter of County of Cayuga v McHugh*, 4 NY2d 609; *Matter of Hecht v Monaghan*, 307 NY 461; *Matter of Ridge Rd. Fire Dist. v Schiano*, 16 NY3d 494; *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176; *Matter of Miller v DeBuono*, 90 NY2d 783.) II. The Appellate Division's misapplication of the standard of review improperly shifted the burden of proof to respondent. (*Matter of Condell v Jorling*, 151 AD2d 88; *Matter of Bergstein v Board of Educ., Union Free School Dist. No. 1 of Towns of Ossining, New Castle & Yorktown*, 34 NY2d 318; *Matter of Felix v New York City Dept. of Citywide Admin. Servs.*, 3 NY3d 498.) III. The Appellate Division exceeded its authority when it

usurped the Niagara Falls Board of Education's right to weigh the evidence. (*Matter of Marsh v Hanley*, 50 AD2d 687; *Matter of 780 P.P. Assoc. v State of N.Y. Div. of Hous. & Community Renewal*, 11 AD3d 392; *Matter of Stork Rest. v Boland*, 282 NY 256.)

*Reden & O'Donnell, LLP*, Buffalo (*Robert J. Reden* and *Terry M. Sugrue* of counsel), for respondent in the first above-entitled proceeding. I. Appellants' decisions to terminate Karri Beck-Nichols' employment was arbitrary and capricious. (*George Backer Mgt. Corp. v Acme Quilting Co.*, 46 NY2d 211; *Matter of Newcomb*, 192 NY 238; *Matter of Hosley v Curry*, 85 NY2d 447; *Matter of Larkin v Herbert*, 185 AD2d 607; *Matter of Felix v New York City Dept. of Citywide Admin. Servs.*, 3 NY3d 498; *Unanue v Unanue*, 141 AD2d 31; *Matter of Gadway*, 123 AD2d 83; *Gould v Gould*, 235 NY 14; *Matter of Gallagher v Dinkins*, 41 AD2d 946, 32 NY2d 839.) II. The Appellate Division properly found that this case did not involve a substantial evidence issue, as appellants did not hold a "hearing" and none was required by law. (*Matter of Gigliotti v Bianco*, 82 AD3d 1636; *Matter of Krajkowski v Bianco*, 85 AD3d 1577, 17 NY3d 712; *Matter of O'Connor v Board of Educ. of City School Dist. of City of Niagara Falls*, 48 AD3d 1254, 10 NY3d 928; *Matter of Felix v New York City Dept. of Citywide Admin. Servs.*, 3 NY3d 498.) III. The Appellate Division properly found that appellants' determination that there was clear and convincing evidence that Karri Beck-Nichols changed her domicile was arbitrary and capricious. (*Matter of Newcomb*, 192 NY 238; *Matter of Hosley v Curry*, 85 NY2d 447; *Matter of Westchester County Med. Ctr. [O'Connor]*, 72 NY2d 517; *George Backer Mgt. Corp. v Acme Quilting Co.*, 46 NY2d 211; *Matter of Babbin v State Tax Commn.*, 49 NY2d 846; *Matter of Gray v Tax Appeals Trib. of State of N.Y.*, 235 AD2d 641; *Matter of Felix v New York City Dept. of Citywide Admin. Servs.*, 3 NY3d 498.)

*Office of General Counsel, New York State United Teachers*, Latham (*Anthony J. Brock* and *Richard E. Casagrande* of counsel), for appellant in the second above-entitled proceeding. I. Petitioner was entitled to a hearing prior to being terminated for allegedly violating respondents' residency policy because, as a tenured teacher, she enjoyed a constitutionally protected property interest in her continued public employment. (*Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist.*, 81 NY2d 446; *Board of Regents of State Colleges v Roth*, 408 US 564; *Cleveland Bd. of Ed. v Loudermill*, 470 US 532; *Matter of*

*Economico v Village of Pelham,* 50 NY2d 120; *Matter of Prue v Hunt,* 78 NY2d 364; *Matter of O'Connor v Board of Educ. of City School Dist. of City of Niagara Falls,* 48 AD3d 1254; *Mathews v Eldridge,* 424 US 319; *Holt v Board of Educ. of Webutuck Cent. School Dist.,* 52 NY2d 625; *Matter of Abramovich v Board of Educ. of Cent. School Dist. No. 1 of Towns of Brookhaven & Smithtown,* 46 NY2d 450; *Ricca v Board of Educ. of City School Dist. of City of N.Y.,* 47 NY2d 385.) II. The Board of Education of the City School District of the City of Niagara Falls and Cynthia A. Bianco violated Roxanne Adrian's statutory right to a hearing under the Education Law because the procedures under Education Law § 3020-a are the exclusive procedures for terminating a tenured teacher. (*Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist.,* 81 NY2d 446; *Matter of Lynch v Nyquist,* 41 AD2d 363, 34 NY2d 588; *Matter of Mannix v Board of Educ. of City of N.Y.,* 21 NY2d 455; *Ricca v Board of Educ. of City School Dist. of City of N.Y.,* 47 NY2d 385; *People ex rel. Murphy v Maxwell,* 177 NY 494; *Matter of Boyd v Collins,* 11 NY2d 228; *Matter of Abramovich v Board of Educ. of Cent. School Dist. No. 1 of Towns of Brookhaven & Smithtown,* 46 NY2d 450; *Matter of Kobylski v Agone,* 37 Misc 2d 255, 19 AD2d 761; *Matter of Glass v Board of Educ. of City of N.Y.,* 21 AD2d 891, 16 NY2d 982; *Matter of Fitzpatrick v Board of Educ. of Mamaroneck Union Free School Dist.,* 96 AD2d 557, 61 NY2d 607.) III. The Appellate Division erred by reversing the Supreme Court determination because the Board of Education of the City School District of the City of Niagara Falls' and Cynthia A. Bianco's action terminating petitioner was arbitrary and capricious. (*Matter of O'Connor v Board of Educ. of City School Dist. of City of Niagara Falls,* 48 AD3d 1254, 10 NY3d 928; *Matter of Gigliotti v Bianco,* 82 AD3d 1636; *Matter of Krajkowski v Bianco,* 85 AD3d 1577; *Matter of Beck-Nichols v Bianco,* 89 AD3d 1405; *Matter of Luchey v Board of Educ. of City School Dist. of the City of Niagara Falls,* 92 AD3d 1276; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222; *Matter of Frick v Bahou,* 56 NY2d 777; *Matter of Lehman v Board of Educ. of City School Dist. of City of N.Y.,* 82 AD2d 832; *Matter of Hosley v Curry,* 85 NY2d 447.)

*Hurwitz & Fine, P.C.,* Buffalo (*Michael F. Perley, Todd C. Bushway* and *Cassandra A. Kazukenus* of counsel), for respondents in the second above-entitled proceeding. I. The process used to terminate Roxanne Adrian fulfilled all necessary due process requirements. (*Cleveland Bd. of Ed. v Loudermill,* 470

US 532; *Board of Regents of State Colleges v Roth*, 408 US 564; *Perry v Sindermann*, 408 US 593; *Kinsella v Board of Educ. of Cent. School Dist. No. 7 of Towns of Amherst & Tonawanda, Erie County*, 378 F Supp 54; *Boddie v Connecticut*, 401 US 371; *Matter of Prue v Hunt*, 78 NY2d 364; *Hellenic Am. Neighborhood Action Comm. v City of New York*, 101 F3d 877; *Interboro Inst., Inc. v Foley*, 985 F2d 90; *Reed v Medford Fire Dept., Inc.*, 806 F Supp 2d 594.) II. Roxanne Adrian was not entitled to a hearing under Education Law § 3020-a because her removal was the result of her violation of a condition of employment rather than misconduct or incompetency. (*Matter of Orens v Novello*, 99 NY2d 180; *Matter of Auerbach v Board of Educ. of City School Dist. of City of N.Y.*, 86 NY2d 198; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 41 NY2d 205; *Matter of Mannix v Board of Educ. of City of N.Y.*, 21 NY2d 455; *Matter of Fitzpatrick v Board of Educ. of Mamaroneck Union Free School Dist.*, 96 AD2d 557; *Matter of Coriou v Nyquist*, 33 AD2d 580; *Matter of O'Connor v Board of Educ. of City School Dist. of City of Niagara Falls*, 48 AD3d 1254; *Matter of Felix v New York City Dept. of Citywide Admin. Servs.*, 3 NY3d 498; *Mandelkern v City of Buffalo*, 64 AD2d 279; *Matter of Moritz v Board of Educ. of Gowanda Cent. School Dist.*, 60 AD2d 161.) III. The standard of review by the Court is whether the Board of Education of the City School District of the City of Niagara Falls' decision to terminate Roxanne Adrian was arbitrary and capricious. (*Matter of Chauvel v Nyquist*, 43 NY2d 48; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222; *Matter of 508 Realty Assoc., LLC v New York State Div. of Hous. & Community Renewal*, 61 AD3d 753; *Matter of Poster v Strough*, 299 AD2d 127; *Matter of Rodriguez v Goord*, 260 AD2d 736; *Matter of Martin v Ambach*, 111 AD2d 1009; *Matter of Spaid v Liverpool Cent. School Dist.*, 169 Misc 2d 41; *Matter of 125 Bar Corp. v State Liq. Auth. of State of N.Y.*, 24 NY2d 174.) IV. The Board of Education of the City School District of the City of Niagara Falls' finding that Roxanne Adrian was not in compliance with the residency policy was not arbitrary and capricious. (*Matter of Stone v Gross*, 25 AD2d 753, 19 NY2d 675; *Town of Huntington v Park Shore Country Day Camp of Dix Hills*, 47 NY2d 61; *Marcus Assoc. v Town of Huntington*, 45 NY2d 501; *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville*, 51 NY2d 338; *Lighthouse Shores v Town of Islip*, 41 NY2d 7; *Connally v General Constr. Co.*, 269 US 385; *People v Vetri*, 309 NY 401; *Brad H. v City of New York*, 17 NY3d 180;

*Currier, McCabe & Assoc., Inc. v Maher*, 75 AD3d 889; *Black & Decker [US] v New York State Dept. of Labor Indus. Bd. of Appeals*, 177 AD2d 948.) V. The Appellate Division did not have authority to review the weight of the evidence before it. (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222; *Matter of 125 Bar Corp. v State Liq. Auth. of State of N.Y.*, 24 NY2d 174.) VI. The Board of Education of the City School District of the City of Niagara Falls did not deviate from factually similar precedent in determining Roxanne Adrian was not in compliance with the residency policy. (*Mater of Charles A. Field Delivery Serv. [Roberts]*, 66 NY2d 516; *Matter of Martin [Troy Publ. Co.—Roberts]*, 70 NY2d 679; *Matter of De La Concha v Fordham Univ.*, 292 AD2d 662.)

*Hurwitz & Fine, P.C.*, Buffalo (*Michael F. Perley* and *Todd C. Bushway* of counsel), for appellants in the third above-entitled proceeding. I. The residency policy was enforceable as written, and the lower courts erred in finding the policy vague and unenforceable. (*Town of Huntington v Park Shore Country Day Camp of Dix Hills*, 47 NY2d 61; *Marcus Assoc. v Town of Huntington*, 45 NY2d 501; *Connally v General Constr. Co.*, 269 US 385; *People v Vetri*, 309 NY 401; *Matter of Stone v Gross*, 25 AD2d 753, 19 NY2d 675; *Brad H. v City of New York*, 17 NY3d 180; *Currier, McCabe & Assoc., Inc. v Maher*, 75 AD3d 889; *Black & Decker [US] v New York State Dept. of Labor Indus. Bd. of Appeals*, 177 AD2d 948; *Evans v Famous Music Corp.*, 1 NY3d 452; *Nissho Iwai Europe v Korea First Bank*, 99 NY2d 115.) II. The appropriate standard of review on appeal in this matter is whether the Board of Education of the City School District of the City of Niagara Falls' determination was arbitrary and capricious. (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222; *Matter of 125 Bar Corp. v State Liq. Auth. of State of N.Y.*, 24 NY2d 174; *Matter of Jennings v New York State Off. of Mental Health*, 90 NY2d 227; *Matter of Shapiro v State Tax Commn.*, 67 AD2d 191, 50 NY2d 822; *Matter of Newcomb*, 192 NY 238; *Matter of Johnson v Town of Amherst*, 74 AD3d 1896; *Matter of Bodfish v Gallman*, 50 AD2d 457; *Matter of Bourne*, 181 Misc 238, 267 App Div 876, 293 NY 785; *Matter of Peck v Town Bd. of Town of Amherst*, 93 AD3d 1326; *Matter of Johnson*, 259 App Div 290, 284 NY 733.)

*Office of General Counsel, New York State United Teachers*, Latham (*Anthony J. Brock* and *Richard E. Casagrande* of

counsel), for respondent in the third above-entitled proceeding. I. The Appellate Division correctly affirmed the Supreme Court determination because appellants' action terminating petitioner was arbitrary and capricious. (*Matter of O'Connor v Board of Educ. of City School Dist. of City of Niagara Falls*, 48 AD3d 1254, 10 NY3d 928; *Matter of Gigliotti v Bianco*, 82 AD3d 1636; *Matter of Krajkowski v Bianco*, 85 AD3d 1577; *Matter of Beck-Nichols v Bianco*, 89 AD3d 1405; *Matter of Adrian v Board of Educ. of City School Dist. of City of Niagara Falls*, 92 AD3d 1272; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222; *Matter of Charles A. Field Delivery Serv. [Roberts]*, 66 NY2d 516; *Matter of Frick v Bahou*, 56 NY2d 777; *Matter of Lehman v Board of Educ. of City School Dist. of City of N.Y.*, 82 AD2d 832; *Matter of Hason v Department of Health*, 295 AD2d 818.) II. Appellants' residency policy is not entitled to a presumption of validity. (*Matter of Stone v Gross*, 25 AD2d 753.) III. Respondent was entitled to a hearing prior to being terminated for allegedly violating appellants' residency policy because, as a tenured school counselor, she enjoyed a constitutionally protected property interest in her continued public employment. (*Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist.*, 81 NY2d 446; *Board of Regents of State Colleges v Roth*, 408 US 564; *Cleveland Bd. of Ed. v Loudermill*, 470 US 532; *Matter of Economico v Village of Pelham*, 50 NY2d 120; *Matter of Prue v Hunt*, 78 NY2d 364; *Matter of O'Connor v Board of Educ. of City School Dist. of City of Niagara Falls*, 48 AD3d 1254; *Mathews v Eldridge*, 424 US 319; *Holt v Board of Educ. of Webutuck Cent. School Dist.*, 52 NY2d 625; *Matter of Abramovich v Board of Educ. of Cent. School Dist. No. 1 of Towns of Brookhaven & Smithtown*, 46 NY2d 450; *Ricca v Board of Educ. of City School Dist. of City of N.Y.*, 47 NY2d 385.) IV. Appellants violated Keli-Koran Luchey's statutory right to a hearing under the Education Law because the procedures under Education Law § 3020-a are the exclusive procedures for terminating a tenured teacher. (*Matter of D'Angelo v Scoppetta*, 19 NY3d 663; *Matter of Lynch v Nyquist*, 34 NY2d 588, 41 AD2d 363; *Matter of Mannix v Board of Educ. of City of N.Y.*, 21 NY2d 455; *People ex rel. Murphy v Maxwell*, 177 NY 494; *Matter of Boyd v Collins*, 11 NY2d 228; *Matter of Abramovich v Board of Educ. of Cent. School Dist. No. 1 of Towns of Brookhaven & Smithtown*, 46 NY2d 450; *Matter of Kobylski v Agone*, 37 Misc 2d 255, 19 AD2d 761; *Matter of Glass v Board of Educ. of City of N.Y.*, 21 AD2d 891, 16 NY2d 982; *Matter of Fitzpatrick v Board*

*of Educ. of Mamaroneck Union Free School Dist.*, 96 AD2d 557, 61 NY2d 607; *Matter of Coriou v Nyquist*, 33 AD2d 580, 26 NY2d 610.)

## OPINION OF THE COURT

READ, J.

These three cases stem from a residency policy that calls for those employees of the School District of the City of Niagara Falls, New York (the District) hired or promoted after the policy's effective date, March 1, 1994, to reside in the City of Niagara Falls (Niagara Falls or the City), and maintain residency there during their employment. The policy's implementing regulations define "residency" as "an individual's actual principal domicile at which he or she maintains usual personal and household effects."

### I.

### *Karri Beck-Nichols*

The District hired Beck-Nichols as a computer operator in July 1994, and promoted her to the position of production control manager in 2005. When she first began to work for the District, Beck-Nichols resided at a house on J. Avenue in Niagara Falls, which she and her husband owned. In 2001, Beck-Nichols and her husband purchased a house in Lewiston, New York, and, upon being asked, Beck-Nichols informed the District's Administrator for Human Resources (the Administrator) that she remained domiciled in Niagara Falls. Beck-Nichols again assured the District she was domiciled in Niagara Falls on December 3, 2003, when she signed a "residency confirmation."

By letter dated June 7, 2004, the Administrator directed Beck-Nichols to attend an "interview conference" for her to present information substantiating compliance with the residency policy. At this meeting, Beck-Nichols, who was accompanied by her attorney, stated that she was residing with her parents and a nephew, of whom she had custody, at her parent's house on C. Avenue in Niagara Falls; that she and her husband were renting out their house on J. Avenue, but intended eventually to return there; and that her husband and three children were residing at the house in Lewiston, where the children attended school.

On January 21, 2009, Beck-Nichols filed an "Employee Change of Address Form" with the District's Office of Human Resources, claiming residency at the J. Avenue address again.

On February 10, 2009, the Administrator wrote to Beck-Nichols, telling her that the District had "reason to believe that [she was] in violation of [the residency] policy"; and scheduling a "residency affirmation meeting" with her for the District "to secure additional information and/or documentation supporting [her] affirmation and continued residency in [Niagara Falls]." This letter was prompted by a Westlaw database search conducted in December 2008, which turned up the Lewiston address for Beck-Nichols.

Beck-Nichols, with her attorney, appeared at the meeting, held on March 25, 2009. To verify compliance with the residency policy, she supplied copies of utility bills and a cable bill addressed to her at the J. Avenue address; a recent voter registration card and driver's license, showing her address as J. Avenue; and a statement for a home equity line of credit for the J. Avenue house, addressed to Beck-Nichols and her husband. At this meeting, the District's attorney brought up the application for exemption from school property taxes under the New York State School Tax Relief Program (STAR), signed by Beck-Nichols and her husband on May 10, 2001 as "resident owners," in which they certified that they owned the Lewiston property; that it was their "primary residence"; and that they understood their obligation to notify the assessor if they relocated to another primary residence. He also raised information showing that tax bills for the J. Avenue property were sent to Beck-Nichols and her husband at the Lewiston address.

Meanwhile, the District had engaged a private company to conduct surveillance, which took place on four days in February, three in March and one in May. The investigators observed Beck-Nichols at the Lewiston address on the first two days of surveillance in February, which were weekdays that she did not work, and on the third day, another weekday, they spotted her vehicle in the parking lot at her workplace. On the fourth day, the investigators followed Beck-Nichols from work to the J. Avenue address, which she entered and exited eight minutes later, and to another residence in Niagara Falls, which she entered and exited 36 minutes later. The investigators noted that as they continued mobile surveillance, Beck-Nichols "[began] driving at high rates of speed and somewhat evasively"; and that she "continue[d] to travel at a high rate of speed pulling into [the] driveway and directly into the garage" at the Lewiston address. Surveillance was discontinued at 7:00 p.m.

The first day of surveillance in March, a Sunday, Beck-Nichols was observed at the Lewiston address; the second day, a

weekday, she drove after work to the J. Avenue address, which she entered and exited 29 minutes later; she then drove to the Lewiston address, and "quickly pull[ed] into the garage as the door close[d] behind"; surveillance was discontinued at 8:00 p.m. On the third day, a weekday, an investigator observed Beck-Nichols leaving the J. Avenue address in the morning, on her way to work. On the single day of surveillance in May, a weekday, Beck-Nichols drove to the Lewiston address after work; she left at 11:40 p.m., "travel[ing] at high rates of speed and rather evasively" toward Niagara Falls. She arrived at the J. Avenue address at 11:56 p.m., where she appeared to "take[ ] notice" of a second investigator's "surveillance position[,] . . . walk[ing] around [the] vehicle before entering the residence." The investigators then established a different observation point; they discontinued surveillance at 1:00 a.m. since it seemed that Beck-Nichols had retired for the night. In the case summary for the investigation, the author noted that Beck-Nichols "appeared to be very suspicious of our surveillance."

On July 10, 2009, the Administrator wrote Beck-Nichols, enclosing a summary of the March 25th meeting and copies of documents referred to in the summary, as well as a copy of the new STAR application for the Lewiston property, dated June 9, 2009, which she had supplied to him the previous day. This application was signed only by Beck-Nichols' husband as "resident owner[ ]." The Administrator noted that all this information would be submitted to the Niagara Falls Board of Education (the Board) for review, and later in July, the Board considered Beck-Nichols' case. Based on the record compiled, the Board concluded that Beck-Nichols did not appear to comply with the residency policy. In accordance with the policy's implementing regulations, the Administrator sent Beck-Nichols a "seven-day letter," dated July 30, 2009, to notify her that the Board had "reason to believe" that she was in violation of the policy, and to give her seven days to respond in writing.

By letter dated August 4, 2009, Beck-Nichols replied that she had maintained the J. Avenue address as her "permanent domicile" throughout 15 years of employment in the District, and had furnished "voter registration, utility bills, driver's license, and other information" to prove this was the case; that her promotion in 2005 led her to believe that the 2004 investigation had ended in her favor; and that she was a tireless worker whose record was "without blemish." She requested the Board reconsider. By letter dated August 14, 2009, the Administrator

offered to meet with Beck-Nichols on August 18, 2009, to provide additional documents. At this meeting, Beck-Nichols was given a copy of the surveillance report; she and her attorney acknowledged that, at some point, she knew she was being followed. On August 21, 2009, the Administrator sent Beck-Nichols a "30-day letter" to notify her that, at the Board's September meeting, the Superintendent of Schools (the Superintendent) would recommend termination of her services for failure to comply with the residency policy.

On September 24, 2009, the Board terminated Beck-Nichols' employment, effective the next day;[1] on December 21, 2009, she commenced this CPLR article 78 proceeding against the Superintendent, the Board's President, the Board and the District, seeking to set aside the Board's determination. Beck-Nichols argued that the termination of her employment was arbitrary and capricious because the District did not prove by clear and convincing evidence that she had abandoned her domicile in Niagara Falls.

Supreme Court transferred the case to the Appellate Division, which annulled the determination, on the law, and granted the petition (89 AD3d 1405 [4th Dept 2011]). The court noted "at the outset" that Supreme Court had improperly transferred the case because the Board's decision did "not involve a substantial evidence issue" (id. at 1406, citing Matter of Krajkowski v Bianco, 85 AD3d 1577, 1578 [4th Dept 2011], lv denied 17 NY3d 712 [2011]). Nonetheless, the Appellate Division reached the merits "in the interest of judicial economy" (id. [internal quotation marks omitted]). The Court agreed with Beck-Nichols that the District was required to muster clear and convincing evidence to show that she had changed her domicile, and did not meet this burden. We subsequently granted leave to appeal (18 NY3d 807 [2012]), and now reverse.

### Roxanne Adrian and Keli-Koran Luchey

#### Adrian

Adrian was appointed a teacher in the District as of September 1, 2003, and later acquired tenure. When hired, she signed an

---

1. According to the District's attorney, the Board considered the residency of 27 employees, and final determinations were made with respect to 20 of them. Of these 20, seven were sent letters indicating that they complied with the residency policy; the employment of six employees (including Beck-Nichols) was terminated; court action blocked action in one case; four employees resigned; one employee retired; and another employee agreed in writing to comply with the residency policy within a reasonable period of time.

employment agreement, acknowledging that she was required to establish residency in Niagara Falls, within the meaning of the residency policy, within six months of her initial appointment; in this agreement, she identified her domicile at the time as an address in Williamsville, New York. On December 12, 2003, the Administrator wrote to Adrian, reminding her that the six-month grace period ended on March 1, 2004. In response, Adrian requested an extension, which the Board granted. On August 11, 2004, Adrian submitted a change of address form, notifying the District that she resided in Niagara Falls at an address on 73rd Street. On August 15, 2006, she submitted a change of address for mailing only; the mailing address was a post office box in Niagara Falls.

A Westlaw database search, conducted in January 2009, indicated that Adrian still resided at the Williamsville address; a record maintained by the State Education Department, obtained in March 2009, disclosed that Adrian had apparently used the Williamsville address when she applied for permanent certification, which was granted in 2007. On April 1, 2009, the Administrator wrote to Adrian, informing her that the District had "reason to believe that [she was] in violation of [the residency] policy"; and scheduling an "interview conference" with her for the District "to secure additional information and/or documentation supporting [her] affirmation and continued residency in [Niagara Falls]."

At this meeting, held on May 12, 2009, Adrian, accompanied by her attorney and union representatives, identified the 73rd Street address in Niagara Falls as her residence. She claimed to live on the second floor in an apartment with a bathroom, bedroom and living room, and a kitchen with a small refrigerator and microwave oven; she produced a lease for the period September 1, 2008 through June 30, 2009, and receipts for rent payments of $350 per month since September 2008. She provided copies of correspondence or documents identifying her address as 73rd Street in Niagara Falls—i.e., cable bills, a voter registration card, a driver's license and vehicle registration card. Adrian said that she resided at the Williamsville address with a friend only in the summertime, although she helped out the friend, who suffered from migraine headaches, in the morning before going to work; she did not pay rent at Williamsville; and there was a phone listing for her there, but not at the 73rd Street address.

In the meantime, surveillance was conducted on behalf of the District on two days in March, one in April and two in May. The

company engaged by the District to perform this investigation reported that Adrian was observed leaving for work from, or returning from work to, the Williamsville address; she was never seen at the 73rd Street address, including the one occasion when a second investigator was stationed there throughout the afternoon/evening hours until 8:00 a.m. the following morning.

Based on the record compiled, the Board in July 2009 concluded that Adrian did not appear to comply with the residency policy. In accordance with the policy's implementing regulations, the Administrator sent Adrian a "seven-day letter," dated July 30, 2009, to notify her that the Board had "reason to believe" that she was in violation of the policy, and to give her seven days to respond in writing. On August 4, 2009, Adrian's attorney wrote to the Administrator, seeking advice "as to what steps [were] necessary to resolve this matter to [his] client's satisfaction." By letter dated August 14, 2009, the Administrator offered to meet with Adrian on August 18, 2009 to provide additional documents. At this meeting, attended by both Adrian's attorney and union representatives, the District's attorney handed over a copy of the surveillance report. By letter dated August 20, 2009, Adrian's attorney furnished the District's attorney with a voter registration card and a letter and bill from the cable company, all showing a new address for Adrian on C. Avenue in Niagara Falls.

On August 21, 2009, the Administrator sent Adrian a "30-day letter" to notify her that, at the Board's September meeting, the Superintendent would recommend termination of her services for failure to comply with the residency policy. Adrian's attorney then wrote the District's attorney, inquiring as to "what other documentation [would be] necessary" to prevent this from happening; the District's attorney replied on September 10, 2009 that, after reviewing the information submitted by Adrian as to her change of address to C. Avenue in Niagara Falls, the Board "remain[ed] of the opinion" that she was out of compliance with the policy. By letter dated September 11, 2009, Adrian's attorney sent the District's attorney a lease signed by Adrian to rent the C. Avenue property as a personal residence for Adrian and two other individuals.[2]

---

2. The rental agreement states that the lease term ran for a six-month period from April 1, 2009 through September 30, 2009, although Adrian claimed at the May 12th meeting that she then resided at 73rd Street in Niagara Falls.

On September 24, 2009, the Board terminated Adrian's employment, effective the next day; on December 18, 2009, she commenced this CPLR article 78 proceeding against the Board and the Superintendent. Adrian contended that, as a tenured employee, she was entitled to a pre-termination hearing complying with Education Law §§ 2509 (2), 3020 and 3020-a; that the Board terminated her employment "without sound basis in reason or regard to the facts"; and that the Superintendent failed to establish administrative procedures to carry out the residency policy, rendering both the policy and the Board's action "incomplete, null, void and of no force and effect."

*Luchey*

Luchey signed an affirmation on November 2, 1999, signifying her understanding that she was required to become a resident of Niagara Falls within six months of her appointment to a position in the District, in accordance with the residency policy. On November 19, 1999, she signed an employment agreement to the same effect; in the agreement, she identified her domicile at the time as North Tonawanda, New York. Luchey's appointment as a school counselor was effective on December 13, 1999. By letter dated March 15, 2000, the Administrator reminded Luchey that the six-month grace period ended on June 13, 2000. In response, Luchey requested an extension, which the Board granted. Before the extension ended, she supplied the District proof of residency at an address on W. Avenue in Niagara Falls; in the fall of 2001, she supplied proof of residency at a new address, P. Road in Niagara Falls. On December 8, 2003, Luchey signed an affirmation in which she declared that her residence was P. Road in Niagara Falls.

A Westlaw database search, conducted in December 2008, indicated that Luchey resided at an address in Amherst, New York. On April 1, 2009, the Administrator wrote to Luchey, informing her that the District had "reason to believe that [she was] in violation of [the residency] policy"; and scheduling an "interview conference" with her for the District "to secure additional information and/or documentation supporting [her] affirmation and continued residency in [Niagara Falls]." At this meeting, held on April 28, 2009, Luchey, accompanied by her attorney and union representatives, identified an address on L.

---

The lease, which was signed by the parties on September 1, 2009, also included a rider indicating that its term began as of September 1, 2009 until "move out date."

Avenue in Niagara Falls as her residence. She submitted her driver's license, car registration, voter registration card, bank statements and other bills or documents listing, or addressed to her at, this address. Luchey described her residence at L. Avenue as a heated basement, with its own shower and kitchen, in a single-family home; she stated that she paid her rent in cash, and had no receipts. Luchey also represented that she and her ex-husband had reached an oral agreement for their seven-year-old son to reside with him in Amherst, although Luchey retained full custody; her son attended school in Amherst.

Prior to the meeting, surveillance had been conducted on behalf of the District during five days in March (four workdays and a Sunday). In four separate observations (on one of the workdays, the investigator was unable to locate Luchey's vehicle in the school's parking lot), Luchey was never seen at her purported Niagara Falls address; instead, she left for work from, and returned from work to, the Amherst address discovered in the database search.

On July 10, 2009, the Administrator supplied Luchey with a summary of the April 28th meeting, and asked for further documentation verifying rent payment. Based on the record compiled, the Board in July 2009 concluded that Luchey did not appear to comply with the residency policy. In accordance with the policy's implementing regulations, the Administrator sent Luchey a "seven-day letter," dated July 30, 2009, to notify her that the Board had "reason to believe" that she was in violation of the policy, and to give her seven days to respond in writing.

Luchey's attorney wrote to the Administrator on August 4, 2009, submitting four receipts for rent paid by Luchey, prepared by the owner of the residence at the L. Avenue address; and requesting copies of the documentation relied on by the District. By letter dated August 14, 2009, the Administrator offered to meet with Luchey on August 18, 2009 to provide additional documents related to her compliance with the residency policy. When Luchey did not attend the meeting, apparently because her attorney was unavailable, the surveillance report was telefaxed to a union representative.

On September 24, 2009, the Board terminated Luchey's employment, effective the next day; on December 18, 2009, she commenced this CPLR article 78 proceeding against the Board and the Superintendent. Like Adrian, Luchey contended that, as a tenured employee, she was entitled to a pre-termination

hearing complying with Education Law §§ 2509 (2), 3020 and 3020-a; that the Board terminated her employment "without sound basis in reason or regard to the facts"; and that the Superintendent failed to establish administrative procedures to carry out the residency policy, rendering both the policy and the Board's action "incomplete, null, void and of no force and effect."

Decisions Below

Although Adrian's and Luchey's lawsuits were not consolidated, their claims were identical, and Supreme Court considered and granted their petitions together. The judge noted that petitioners were not entitled to pre-termination hearings because the residency requirement was "merely a . . . condition of employment," citing *Matter of Felix v New York City Dept. of Citywide Admin. Servs.* (3 NY3d 498 [2004]). But considering the basis for petitioners' job loss, he characterized the policy's definition of residency as creating a "vague and ambiguous" standard which, coupled with the Superintendent's failure to develop adequate procedures and guidelines, "resulted in varied and subjective interpretations leading to disparate results." The judge therefore held that the residency requirement was unenforceable, and that any termination of Adrian's and Luchey's employment based on it was therefore arbitrary and capricious. He directed their reinstatement with full back pay and benefits. The Board and Superintendent appealed.

The Appellate Division considered these appeals separately. One panel reversed the judgment as to Adrian (92 AD3d 1272 [4th Dept 2012]). In the court's view, the District established that Adrian was not domiciled in Niagara Falls, and therefore the Board's determination was not arbitrary and capricious. The court also rejected Adrian's alternative ground for affirmance—i.e., that the District did not conduct a pre-termination trial-type hearing—on the ground that this was not mandated by law. We granted Adrian leave to appeal (19 NY3d 804 [2012]), and now affirm. The other panel affirmed the judgment as to Luchey, without opinion (92 AD3d 1276 [4th Dept 2012]). We granted the Board and Superintendent leave to appeal (20 NY3d 851 [2012]), and now reverse.

## II.

A residency policy for municipal workers serves "the legitimate purpose of encouraging city employees to maintain a commitment and involvement with the government which employs

them by living within the city [citations omitted]" (*Felix*, 3 NY3d at 505, quoting *Mandelkern v City of Buffalo*, 64 AD2d 279, 281 [4th Dept 1978, Simons, J.]). The District's residency policy states simply that "[t]he Niagara Falls Board of Education requires that employees hired or promoted after the effective date of this policy[ ] be residents of the City of Niagara Falls and maintain their residency during their term of employment." The implementing regulations, as noted earlier, define "residency" as "an individual's actual principal domicile at which he or she maintains usual personal and household effects." This definition may be criticized for redundancy or surplusage, but not ambiguity. The word "domicile" alone is enough to convey the sense that the Board mandates that District employees live in Niagara Falls "with intent to make it a fixed and permanent home" (*see Matter of Newcomb*, 192 NY 238, 250 [1908]).

Further, the regulations provide for notifying employees of the residency policy upon initial appointment and promotion; give employees six months after appointment to come into compliance, and allow the Board, in its discretion, to extend this grace period for another six months; provide for a "seven-day letter" to afford an employee the opportunity to respond to allegations of noncompliance; include a hardship waiver; and exempt nonadministrative employees hired prior to the policy's effective date, subject to certain conditions. The regulations also include detailed forms to carry out the policy. These forms, in one way or another, call for employees to acknowledge that they have read, understand and agree to fulfill their responsibilities under the policy.

In short, the residency policy and its implementing regulations make clear that District personnel are expected to be domiciled in Niagara Falls within no more than a year after appointment, and throughout their subsequent employment. Nothing in the policy or regulations might reasonably lead a prospective employee into supposing that a mail drop or pied-à-terre in the City was sufficient. Indeed, the policy would be pointless if this were enough to satisfy the residency obligation.

Next, we have held that a residency requirement defines eligibility for employment, and so is "unrelated to job performance, misconduct or competency" (*see Felix*, 3 NY3d at 505; *see also Matter of New York State Off. of Children & Family Servs. v Lanterman*, 14 NY3d 275, 282 [2010]). Consequently, Adrian

and Luchey were not entitled to hearings complying with Education Law §§ 2509 (2), 3020 and 3020-a, which deal with teacher discipline (*see Matter of O'Connor v Board of Educ. of City School Dist. of City of Niagara Falls,* 48 AD3d 1254 [4th Dept 2008], *lv dismissed* 10 NY3d 928 [2008]). And due process mandates only notice and some opportunity to respond (*see Matter of Prue v Hunt,* 78 NY2d 364, 368 [1991] [applying *Cleveland Bd. of Ed. v Loudermill,* 470 US 532, 543 (1985)]).

Here, the Administrator notified Beck-Nichols, Adrian and Luchey that they were suspected of violating the residency policy. There ensued individual meetings at which they appeared with counsel (and union representatives in two instances), where the District received and offered evidence bearing on their residency. Information developed as a result of the meetings and through surveillance was shared with the employees and submitted to the Board, which concluded that there was reason to believe that Beck-Nichols, Adrian and Luchey were violating the policy. The Administrator then sent a "seven-day letter," which afforded a last-chance opportunity for these employees to make the case that they, in fact, resided in Niagara Falls within the meaning of the policy. When the evidence or argument presented in response to the letters proved unpersuasive, the Administrator issued a "30-day letter" to inform Beck-Nichols, Adrian and Luchey that the Superintendent would recommend at the next Board meeting that their services be terminated for failure to comply with the residency policy. These notice-and-hearing procedures, which are more extensive than the regulations' provision for a single notification and opportunity to respond via a "seven-day letter," easily comply with due process.

Finally, the proper standard for judicial review in these cases is whether the Board's determination was arbitrary and capricious or an abuse of discretion (*see* CPLR 7803 [3]). This standard is, of course, an extremely deferential one: "The courts cannot interfere [with an administrative tribunal's exercise of discretion] unless there is *no rational basis* for [its] exercise . . . or the action complained of is arbitrary and capricious," a test which "chiefly relates to whether a particular action should have been taken or is justified . . . and whether the administrative action is *without foundation in fact*" (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222, 231 [1974] [citations and internal quotation marks omitted and

emphases added]). Beck-Nichols seeks to create a higher standard by arguing that because she was concededly domiciled in Niagara Falls when hired (unlike Adrian and Luchey), the District was obliged to prove by clear and convincing evidence that she abandoned her domicile; that the District did not meet this standard; and so the Board's decision to end her employment was perforce arbitrary and capricious. She relies principally on our decision in *Matter of Hosley v Curry* (85 NY2d 447 [1995]).

In that case, Hosley sought an order disqualifying Curry, the district attorney of Hamilton County, from acting in that capacity on the basis that Curry was, in fact, a resident of Warren County, and so did not satisfy the residency requirements of Public Officers Law §§ 3 and 30. Section 3 (1) provides that "[n]o person shall be capable of holding a civil office who shall not . . . [be] a resident of the political subdivision . . . of the state for which he shall be chosen"; section 30 (1) (d) concomitantly specifies that "[e]very office shall be vacant upon . . . [the incumbent's] ceasing to be an inhabitant . . . of the political subdivision . . . of which he is required to be a resident when chosen." Curry owned residences in both Hamilton and Warren Counties. Supreme Court decided that Hosley had not met the burden of proof necessary to declare that Curry was a nonresident of Hamilton County. The Appellate Division reversed, declaring that "Supreme Court's conclusion could not be reached under any fair interpretation of the [facts]," which were essentially undisputed (207 AD2d 116, 118 [3d Dept 1995]).

First, we held that the terms "resident" and "inhabitant" in sections 3 and 30 were "properly understood to be synonymous with domicile" (*Curry*, 85 NY2d at 451). Next, we interpreted these statutory provisions to incorporate the definition of domicile and standard of proof specified in *Newcomb*, a will contest where the decedent's domicile at death was disputed. As a result, we held that Hosley, who was alleging a change in Curry's domicile from Hamilton to Warren County, bore the burden to demonstrate by "clear and convincing evidence" that the district attorney possessed a "present, definite and honest purpose to abandon the Hamilton County domicile and make the Warren County residence his fixed and permanent home" (*id.* at 452). We "conclude[d] that Supreme Court's determination that [Hosley] failed to sustain the burden more nearly comport[ed] with the weight of the evidence" (*id.*; *see also* CPLR 5501 [b]).

■ Beck-Nichols invites us to extend *Curry*, which involved the interpretation of statutes governing public officers, to municipal residency requirements applicable to public employees and enforced through administrative decision making. We decline to make this leap. In any event, there is clear and convincing and, indeed, dispositive evidence that Beck-Nichols abandoned her domicile in Niagara Falls after her initial appointment; namely, in May 2001 she and her husband signed a STAR application in which they certified that the Lewiston address was their "primary residence." The Board was certainly entitled to disregard the new STAR application filed for the Lewiston property in June 2009 and signed only by Beck-Nichols' husband. This happened after, and the Board might have reasonably concluded solely because, the District's attorney questioned Beck-Nichols about the 2001 application at the meeting held in March 2009 to review her residency status. Additionally, of course, Beck-Nichols' husband and family lived at the Lewiston residence; her children attended school in Lewiston; and Beck-Nichols, who apparently early on figured out that she was being followed and sought to evade surveillance, spent little time at the J. Avenue address in Niagara Falls.

■ Likewise, the Board rationally concluded that Adrian did not comply with the residency policy. She lived in Williamsville when initially appointed, and the evidence developed during the investigation, discussed earlier, might have reasonably caused the Board to conclude that she never abandoned her domicile there. The trial judge did not decide whether the Board's decision with respect to Luchey's residency was rational because he disposed of her case (and Adrian's) on the ground the policy was unenforceable. We can surmise that the Appellate Division affirmed in *Luchey* on alternative grounds, given its decision in *Adrian* upholding the Board's application of the policy. The Appellate Division affirmed in *Luchey* without opinion, though, so we do not know the basis for its ruling. In light of this circumstance, we must presume that the Appellate Division, like Supreme Court, did not consider the merits; therefore, we remit for Supreme Court to resolve in the first instance whether the Board's determination that Luchey did not comply with the residency policy was arbitrary and capricious or an abuse of discretion.

Accordingly, in *Beck-Nichols* the judgment of the Appellate Division should be reversed, with costs, and the petition dismissed; in *Adrian*, the order of the Appellate Division should

be affirmed, with costs; and in *Luchey*, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion. .

Chief Judge LIPPMAN and Judges GRAFFEO, SMITH and PIGOTT concur; Judge RIVERA taking no part.

In *Matter of Beck-Nichols v Bianco*: Judgment reversed, with costs, and petition dismissed.

In *Matter of Adrian v Board of Educ. of City Sch. Dist. of City of Niagara Falls*: Order affirmed, with costs.

In *Matter of Luchey v Board of Educ. of City Sch. Dist. of the City of Niagara Falls*: Order reversed, with costs, and matter remitted to Supreme Court, Niagara County, for further proceedings in accordance with the opinion herein.