# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**429**

**CA 12-01495**

PRESENT: SCUDDER, P.J., PERADOTTO, LINDLEY, VALENTINO, AND MARTOCHE, JJ.

---

IN THE MATTER OF SANDRA BOWMAN,
PETITIONER-RESPONDENT,

V                                                          MEMORANDUM AND ORDER

CITY OF NIAGARA FALLS AND DONNA OWENS, CITY
ADMINISTRATOR, RESPONDENTS-APPELLANTS.

---

CRAIG H. JOHNSON, CORPORATION COUNSEL, NIAGARA FALLS (CHRISTOPHER M.
MAZUR OF COUNSEL), FOR RESPONDENTS-APPELLANTS.

CREIGHTON, JOHNSEN & GIROUX, BUFFALO (E. JOSEPH GIROUX, JR., OF
COUNSEL), FOR PETITIONER-RESPONDENT.

---

Appeal from a judgment (denominated order) of the Supreme Court, Niagara County (Richard C. Kloch, Sr., A.J.), entered May 14, 2012 in a proceeding pursuant to CPLR article 78. The judgment granted the petition.

It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law without costs and the petition is dismissed.

Memorandum: Petitioner commenced this CPLR article 78 proceeding seeking, inter alia, to annul the determination terminating her employment with the City of Niagara Falls (City) based on her failure to comply with the City's residency requirement, which requires City employees to reside in the City. We agree with respondents that Supreme Court erred in granting the petition.

Initially, we reject respondents' contention that the court should have dismissed the petition because petitioner waived her right to reinstatement by signing a "last chance agreement." The agreement provided, in relevant part, that any future violation of the residency requirement "may result in your termination following a due process hearing. If you are found to have violated the residency requirement at that time, you hereby waive your right to be reinstated, under any circumstances, as identified under Section 5 of the Local Law." Section 5 of Local Law No. 7 (1984) (hereafter, Local Law No. 7), which was removed from the law in 2009, provided that an employee who was forced to resign upon violation of the residency requirement could reestablish residency and thereafter apply for reinstatement to his or her former position. Here, petitioner does not seek reinstatement "as identified under Section 5 of the Local Law," which in any event is no longer in

effect.  Rather, petitioner seeks reinstatement on the ground that, inter alia, respondents' determination was arbitrary and capricious and the residency requirement is inconsistently enforced.

We agree with respondents, however, with respect to the merits.  As we noted in *Matter of Alexis v City of Niagara Falls* (___ AD3d ___ [May 3, 2013]), the Court of Appeals has written that "the proper standard for judicial review in these cases is whether the . . . determination was arbitrary and capricious or an abuse of discretion (*see* CPLR 7803 [3]).  This standard is, of course, an extremely deferential one:  The courts cannot interfere [with an administrative tribunal's exercise of discretion] unless there is *no rational basis* for [its] exercise . . . or the action complained of is arbitrary and capricious, [a test which] chiefly relates to whether a particular action should have been taken or is justified . . . and whether the administrative action is *without foundation in fact*" (*Matter of Beck-Nichols v Bianco*, 20 NY3d 540, 559 [internal quotation marks omitted]).

Here, we conclude that respondents' determination that petitioner violated the City's residency requirement was neither arbitrary and capricious nor an abuse of discretion (*see id.*).  Local Law No. 7, as amended, defines "residency" as "*the actual principal place of residence* of an individual, where he or she normally sleeps; normally maintains personal and household effects; the place listed as an address on voter registration; and the place listed as his or her address for driver's license and motor vehicle registration, if any" (Local Law No. 7 § 2 [emphasis added]).  As we wrote in *Alexis*, we agree with respondents that the phrase "actual principal place of residence" "is akin to, if not synonymous with, the legal concept of 'domicile,' i.e., 'living in [a] locality with intent to make it a fixed and permanent home' " (*id.* at ___, quoting *Matter of Newcomb*, 192 NY 238, 250).  We further agree with respondents that they sufficiently established that petitioner's "actual principal place of residence" was in the Town of Niagara (Local Law No. 7 § 2; *see Matter of Adrian v Board of Educ. of City Sch. Dist. of City of Niagara Falls*, 92 AD3d 1272, 1272, *affd sub nom. Beck-Nichols v Bianco*, 20 NY3d 540).

The City hired a surveillance company, which observed petitioner on 22 separate occasions over a 13-day period in October and November 2009, and on two additional occasions in September 2010.  On eight of the 10 weekday mornings that petitioner was under surveillance, she was a passenger in a vehicle that was driven from a Town of Niagara (Niagara) address to another Niagara address.  Upon arriving at the second address, petitioner opened the garage door, entered her vehicle, and drove to work.  On each of those eight mornings, the investigators had arrived at the first Niagara address between 6:30 a.m. and 7:15 a.m.  On each of the eight weekday afternoons that petitioner was under observation, she drove from work to the second Niagara address.  On one of those afternoons, petitioner was observed driving from work to the first Niagara address and then, at about 6:00 p.m., driving from that address to the second Niagara address, whereupon she parked her vehicle in the garage and entered a different vehicle as a passenger.  On the two mornings that petitioner was observed in September 2010, she drove directly from the first Niagara address to work.  Both times, the

investigator established that her vehicle was in the driveway of the first Niagara address as of 6:15 a.m. or 6:30 a.m.

Under these circumstances, we conclude that respondents' determination was not arbitrary and capricious because there is substantial evidence, based on the surveillance on 10 out of the 12 mornings in 2009 and 2010, that petitioner actually resided and "normally [slept]" at the first Niagara address. Although petitioner produced documents listing a City residence as her address, "that evidence was not so overwhelming as to support the court's determination granting the petition" (*Adrian*, 92 AD2d at 1273). Rather, under the "extremely deferential" standard applied in reviewing administrative determinations (*Beck-Nichols*, 20 NY3d at 559), the City's determination that petitioner's actual principal place of residence was outside the City is not "*without foundation in fact*" (*id.*), and the City "rationally concluded that [petitioner] did not comply with the residency policy" (*id.* at 561).

Finally, we agree with respondents that the court erred in determining that the residency requirement is unenforceable (*see generally id.* at 557-558).

Entered:  June 7, 2013                    Frances E. Cafarell
                                          Clerk of the Court