[821 NE2d 935, 788 NYS2d 631]

In the Matter of FRANCISCO FELIX, Respondent, v NEW YORK CITY DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES et al., Appellants.

Argued October 19, 2004; decided November 30, 2004

## POINTS OF COUNSEL

*Michael A. Cardozo, Corporation Counsel,* New York City (*Sharyn Rootenberg* and *Larry A. Sonnenshein* of counsel), for appellants. I. The City of New York had the constitutional and statutory power to enact Administrative Code of the City of New York § 12-120, which imposes a residency requirement both as a condition precedent to city employment and as a qualification for continued employment. (*McCarthy v Philadelphia Civ. Serv. Commn.,* 424 US 645; *Lorenz v Logue,* 611 F2d 421; *Wardwell v Board of Educ. of City School Dist. of City of Cincinnati,* 529 F2d 625; *Winkler v Spinnato,* 72 NY2d 402; *Wright v City of Jackson, Miss.,* 506 F2d 900; *Uniformed Firefighters Assn. v City of New York,* 50 NY2d 85.) II. Administrative Code of the City of New York § 12-120 does not conflict with any state statute. Therefore, where respondent forfeited his position by operation of local law and his subsequent dismissal was not imposed as a discretionary disciplinary penalty, the lower courts erred in holding that respondent was entitled to a disciplinary hearing under Civil Service Law § 75. (*Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 91; *Matter of Giliforte v City of Buffalo,* 54 AD2d 170; *Matter of Economico v Village of Pelham,* 50 NY2d 120; *Board of Regents of State Colls. v Roth,* 408 US 564; *Mandelkern v City of Buffalo,* 64 AD2d 279; *DeFranks v City of Buffalo,* 248 AD2d 992; *Ivey v State of New York,* 80 NY2d 474; *Matter of Consolidated Edison Co. v Department of Envtl. Conservation,* 71 NY2d 186; *People v Newman,* 32 NY2d 379, 414

US 1163; *Alweis v Evans,* 69 NY2d 199.) III. The Department Advocate's determination that respondent was no longer qualified for employment based upon his violation of the residency rule was neither arbitrary or capricious nor in violation of his rights under the law. (*Matter of Pell v Board of Educ.,* 34 NY2d 222; *Matter of Clancy-Cullen Stor. Co. v Board of Elections,* 98 AD2d 635; *Matter of Berenhaus v Ward,* 70 NY2d 436; *Matter of Collins v Codd,* 38 NY2d 269; *Matter of Stork Rest. v Boland,* 282 NY 256; *Matter of Pesante v Abate,* 211 AD2d 504.)

*Kennedy, Schwartz & Cure, P.C.,* New York City (*Stuart Lichten* of counsel), for respondent. A municipality may not dismiss a tenured employee except after a hearing upon stated charges. (*Matter of Seeley v Stevens,* 190 NY 158; *Matter of Morris v Neider,* 259 App Div 49; *Matter of Simpson v Wolansky,* 38 NY2d 391; *Matter of Heckt v City of Lackawanna,* 44 AD2d 763; *Matter of Verbeeck v Board of Educ., Shoreham-Wading Riv. Cent. School Dist.,* 118 AD2d 784; *Matter of Emerman v Nathan,* 34 AD2d 282; *Matter of Papasidero v Fasano,* 19 NY2d 440; *Matter of Wolff v Hodson,* 285 NY 197; *Matter of Bailey v Susquehanna Val. Cent. School Dist. Bd. of Educ.,* 276 AD2d 963; *Matter of Borrell v County of Genesee,* 73 AD2d 386.)

*Joel Giller,* New York City, and *Kim Hsueh* for District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO, amicus curiae. I. Appellants' practice of terminating employees for alleged residency violations without a Civil Service Law § 75 hearing poses a great risk of erroneous deprivation of a vested property right. (*United States v James Daniel Good Real Prop.,* 510 US 43.) II. The essential principle derived from the Civil Service Law is that due process is required before a tenured civil servant can be removed. III. The requirement of compliance with Civil Service Law § 75 for alleged residency violations serves public policy and the rationale of the residency requirement. (*Matter of Seeley v Stevens,* 190 NY 158.) IV. Section 75 of the Civil Service Law preempts any municipal law. (*Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs,* 74 NY2d 761; *Vatore v Commissioner of Consumer Affairs,* 83 NY2d 645.) V. Appellants' reliance on the Fourth Department's decision in *Mandelkern v City of Buffalo* (64 AD2d 279 [1978]) is misplaced. (*Rawstorne v Maguire,* 265 NY 204; *Matter of Markowitz v Gumbs,* 122 AD2d 906; *Matter of Hosley v Curry,* 85 NY2d 447; *Matter of Newcomb,* 192 NY 238; *Matter of Ziehm v City of Buffalo,* 90 AD2d 677, 59 NY2d 757.) VI. The Administrative Code

of the City of New York's provision for forfeiture of employment supports the fact that employees may not be summarily terminated without due process. (*United States v James Daniel Good Real Prop.,* 510 US 43; *Mathews v Eldridge,* 424 US 319; *Matter of Duffy v Ward,* 81 NY2d 127.)

## OPINION OF THE COURT

G.B. Smith, J.

The issue before this Court is whether a person employed by the municipality of New York City, with permanent, civil service status, can be deemed to have forfeited his employment after failing to establish his city residency following notice of and an opportunity to contest the claimed nonresidency. We conclude that failure to establish residency is a violation of the City's residency requirement, which results in forfeiture of employment, and is not misconduct that would entitle the employee to a preremoval hearing.

On July 30, 1986, Edward I. Koch, then Mayor of the City of New York, signed into law a bill, sponsored at his request by members of the City Council of New York City, that required all nonuniformed employees in mayoral agencies, hired on or after September 1, 1986, to establish and maintain residence within the five boroughs of New York City as a condition of employment (*see* Transcript of Stenographic Record of Public Hearing on Local Laws [Koch], July 30, 1986, at 1-6, Mayoral Bill Jacket, Local Law No. 40 [1986]).[1] Prior to signing the bill into law, Mayor Koch specifically stated that "[f]ailure to establish or maintain City residence will constitute forfeiture of employment" (Transcript of Stenographic Record of Public Hearing on Local Laws [Koch], July 30, 1986, at 2). Local Law No. 40 (1986) of the City of New York, the law in question, amended sections 12-119, 12-120 and 12-121 of the Administrative Code of the City of New York. New York City Administrative Code § 12-120, as amended, provides:

> "Except as otherwise provided in section 12-121,
> any person who enters city service on or after
> September first nineteen hundred eighty-six (i) shall

---

1. According to Mayor Koch, the residency requirement was meant to: (1) increase employment opportunities for New York City residents; (2) bolster the local economy; and (3) increase accountability of city employees and the level of concern and pride in the delivery of services to the City (*see* Transcript of Stenographic Record of Public Hearing on Local Laws [Koch], July 30, 1986, at 3).

be a resident of the city on the date that he or she enters city service or shall establish city residence within ninety days after such date and (ii) shall thereafter maintain city residence as a condition of employment. Failure to establish or maintain city residence as required by this section shall constitute a forfeiture of employment; provided, however, that prior to dismissal for failure to establish or maintain city residence an employee shall be given notice of and the opportunity to contest the charge that his or her residence is outside the city."[2]

Even those employees who benefit from the protections of Civil Service Law § 75 are subject to New York City's residency requirement.

In August 1993, respondent Felix was hired by appellant New York City Department of Citywide Administrative Services (DCAS) and permanently appointed to the competitive class position of high pressure plant tender. Accordingly, Felix's employment was subject both to New York City Administrative Code § 12-120 and to Civil Service Law § 75. Moreover, in connection with his employment, on or about August 15, 1993, Felix completed, signed, swore to and had notarized a residency form in which he acknowledged that his employment was conditioned on maintaining residence in New York City and that if he failed to remain a New York City resident, he could forfeit his employment.[3]

---

**2.** New York City Administrative Code § 12-119 provides that "residence" means domicile, "resident" means domiciliary and the term "city service" means "service as an employee of the city or of any agency thereof other than service in a position which is exempted from municipal residence requirements pursuant to the public officers law or any other state law."

New York City Administrative Code § 12-121 sets forth exceptions to New York City's residency requirement. Felix does not contend that he falls within any of the section 12-121 exceptions.

**3.** Felix's residency form states, in pertinent part:

"I, Francisco Felix, am or expect to be employed by the above agency or department on the date of appointment and in the position indicated above. I hereby certify that I reside at the above address which is in The City of New York. . . .

"I hereby agree that I will notify the head of the above agency and the Department of Personnel of The City of New York prior to any change of residence by me or my spouse during such time as I remain employed by The City of New York. I understand that if I fail to remain a resident during the period of my employment with The City of New York I may forfeit my employment

Approximately nine years after Felix's appointment, DCAS began to suspect that Felix resided in Nassau County, in violation of New York City's residency requirement. In a memorandum, DCAS informed Felix of its suspicion, and directed Felix to attend a meeting on January 23, 2002, at which time he would have an opportunity to contest the allegation. The memorandum stated that if Felix planned to contest the allegation, he should bring documentation demonstrating his New York City residency including deeds and leases for real property, utility bills, his driver's license and vehicle registration, voter registration cards and federal and state tax returns. The memorandum further stated that *"[t]ax returns are necessary documentation."* Felix was advised that he could bring an attorney or union representative to the meeting.

Felix appeared at the January 23 meeting with a union representative and, in accordance with DCAS procedures, was asked to produce two forms of identification. He produced a New York State driver's license with a Corona (Queens County), New York address and an expiration date of June 3, 2004. DCAS requested additional documents regarding his residency, but Felix said that he did not bring any additional documentation with him. Felix further stated that he was not aware that he was required to be a New York City resident. DCAS then showed Felix the residency form he had completed and sworn to. In order to afford Felix the opportunity to produce additional documentation, DCAS adjourned the meeting for two days.

On January 25, 2002, the meeting reconvened and Felix again appeared with a union representative. This time, however, when asked to produce documentation to establish his place of residence, Felix submitted the following documents:

(1) a letter from his sister, dated January 23, 2002, stating that he lived with her in Flushing (Queens County), New York;

(2) a voter registration card, dated January 23, 2002;

(3) an interim driver's license, issued on January 23, 2002;

(4) a vehicle registration card, issued on January 24, 2002;

---

unless I have been granted an exemption from the residency requirements in accordance with the Mayoral Directive on Residence or Section 12-119 et seq. of the Administrative Code."

(5) a New York State insurance identification card pertaining to an insurance policy with an effective date of January 23, 2002;[4]

(6) a letter from Felix's union, dated January 24, 2002, stating that according to its records, Felix resided in Kew Gardens (Queens County), New York;

(7) a delinquency notice from an out-of-state dentist's office, dated January 24, 2002, reflecting that Felix's address was in Flushing, New York; and

(8) a W-2 form and federal income tax return for the tax year 2000 which both indicated that Felix resided in Valley Stream (Nassau County), New York.

In a letter dated January 28, 2002, DCAS advised Felix that, based on its review of the submitted documentation, it had determined that the evidence submitted by Felix did not credibly establish that he maintained residence in New York City as required by New York City Administrative Code § 12-120. DCAS concluded that all of the documentation reflecting Felix's residence in New York City was created after the January 23, 2002 meeting had adjourned for the sole purpose of establishing a New York City residence. Accordingly, DCAS found that Felix violated the residency requirement for his job and was deemed to have forfeited his position. He was immediately dismissed from his employment.

Felix filed a CPLR article 78 proceeding to challenge his dismissal, arguing that he was entitled to reinstatement with back pay because he was discharged without a preremoval hearing under Civil Service Law § 75 (1).[5] Supreme Court granted Felix's petition. The Appellate Division affirmed, and this Court granted leave to appeal.

A municipal employee must be afforded procedural due process before he or she is dismissed from employment for violating New York City's residency requirement. Accordingly, this

---

4. Documents (2)-(5) indicated that Felix's address was in Flushing, New York.

5. Civil Service Law § 75 sets forth a procedure under which certain employees, including those with permanent, civil service status, may be removed or subjected to other disciplinary action for misconduct or incompetency. Civil Service Law § 75 (1) provides, in pertinent part:

"A person [holding a position by permanent appointment in the competitive class of the classified civil service] shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section."

Court must determine two questions: first, whether Felix's nonresidency was a forfeiture of employment or misconduct for which he was entitled to a preremoval hearing and second, did the "notice of and the opportunity to contest the charge" procedure set forth under New York City Administrative Code § 12-120 satisfy due process.

█ We note at the outset that the act of failing to maintain one's residence within the municipality is separate and distinct from an act of misconduct by a municipal employee in the performance of his or her work. Failure to maintain residence renders an individual ineligible for continued municipal employment under New York City Administrative Code § 12-120, while an act of misconduct invokes Civil Service Law § 75 disciplinary procedures, including a preremoval hearing if removal of the municipal employee is contemplated (*see e.g., Mandelkern v City of Buffalo*, 64 AD2d 279 [4th Dept 1978]). In *Mandelkern*, the Appellate Division, Fourth Department held that a City of Buffalo ordinance setting forth residency requirements for city employees did not violate Civil Service Law § 75 (1). In so holding, the Court noted that residency requirements define eligibility for employment, not misconduct to which civil service protections would apply. The Court stated as follows:

> "[t]he local legislation and the Civil Service Law
> have different purposes. The [local legislation] is
> designed with the legitimate purpose of encouraging
> city employees to maintain a commitment and
> involvement with the government which employs
> them by living within the city [citations omitted].
> When so viewed, it is clear that residence is a
> consideration unrelated to job performance, miscon-
> duct or competency. It is a qualification of employ-
> ment, . . . and a qualification which the city may
> impose if it chooses to do so without running afoul
> of the Constitution or general laws of the State. The
> Civil Service Law, on the other hand, prescribes the
> procedures for removal of a protected employee
> charged with delinquencies in the performance of
> his job. It has nothing to do with eligibility for
> employment" (*Mandelkern*, 64 AD2d at 281).[6]

Similarly, the instant residency requirement has a different

---

**6.** It should be noted that *Mandelkern* was cited in a memorandum from the City of New York's Law Department advising the then Deputy Mayor for Operations that New York City can enact a residency law (*see* Mem from

purpose than Civil Service Law § 75 (1) (*see* n 1 [at 501] for purpose of New York City's residency requirement). Accordingly, the procedural due process afforded under Civil Service Law § 75 (1), i.e., a preremoval hearing, is not necessarily required for dismissals pursuant to New York City Administrative Code § 12-120 (*see e.g., Mandelkern,* 64 AD2d at 281; *Schirmer v Town of Harrison,* 1999 WL 61843, 1999 US Dist LEXIS 1292 [SD NY, Feb. 10, 1999]).[7]

■ We next address the question whether the procedure itself comported with state and federal due process requirements. The instant residency requirement provides that a municipal employee "shall be given notice of and the opportunity to contest the charge that his or her residence is outside the city" (New York City Administrative Code § 12-120). To determine whether this procedure satisfied due process here, we necessarily take into account that Felix was required and/or requested to produce various documents, e.g., tax documents, driver's license and voter registration card, in order to establish a New York City residence. Documents such as these need not be subjected to the adversarial testing of a hearing in order for the municipality to determine whether a municipal employee has established that he or she resides in New York City. The municipality need only review each document to make that determination. As such, we conclude that the "notice of and the opportunity to contest the charge" procedure set forth in New York City's residency requirement satisfies due process.

Here, Felix was afforded the requisite due process; however, the documents he submitted did not establish that his current residence was in New York City. To the contrary, Felix submitted a driver's license with a New York City address he later admitted was no longer current, seven documents that were clearly created after the January 23 meeting for the sole purpose of establishing that Felix's residence was in New York City, and most significantly, two tax documents which established that Felix's residence was outside of New York City. Thus, DCAS correctly determined that Felix forfeited his position and that dismissal was warranted.

---

City of NY Law Dept, Nov. 4, 1985, at 9, Mayoral Bill Jacket, Local Law No. 40 [1986]).

7. The United States Supreme Court has stated that "[a] procedural rule that may satisfy due process in one context may not necessarily satisfy procedural due process in every case" (*Bell v Burson,* 402 US 535, 540 [1971]).

Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order reversed, etc.