OPINION OF THE COURT
Michael C. Lynch, J.
The petitioner began working as a police officer in the patrol division for the respondent City of Albany in June 2008. On December 11, 2010, while off duty, he was arrested and charged with violating Vehicle and Traffic Law § 1192 (3) (driving while intoxicated). Because petitioner refused to take a chemical test, the Department of Motor Vehicles revoked his driver’s license.
On April 8, 2011, the respondent Steven Krokoff, the City of Albany Chief of Police, wrote to petitioner to advise that he was aware that petitioner’s license had been revoked. Further, he wrote that “it is a minimum qualification for [a] Police Officer in the City of Albany to maintain a valid driver’s license”; but that he was, “willing to afford [petitioner] the opportunity to present. . . written documentation regarding the status of [his] license ... on or before April 25, 2011. Upon presentation of such information, your status will be reviewed and an appropriate determination made.” On April 25, 2011 petitioner reported to the Chief that his driver’s license was, “currently suspended pending prosecution and revoked for refusal to submit to a chemical test as of April 8, 2011."[1] Petitioner also provided a “Notice of Appeal” filed with respect to the revocation. By correspondence dated May 3, 2011, Chief Krokoff terminated the petitioner, “effective immediately” explaining: “In that you no longer hold a valid State driver’s license allowing you to lawfully operate a motor vehicle in this State, you no longer meet a critically important minimum qualification of a Police Officer in the City of Albany.”
Petitioner commenced this CPLR article 78 proceeding on August 26, 2011. He contends that the respondent’s determination to terminate his employment based on his failure to possess a valid driver’s license was affected by an error of law and was arbitrary and capricious. Petitioner also argues that the de *795 termination was without a rational basis and arbitrary and capricious because “no other police officer who has had his or her license temporarily suspended or revoked has been terminated . . . for the failure to possess a valid New York State driver’s license.”
A pretermination hearing pursuant to Civil Service Law § 75 or, in certain cases, a collective bargaining agreement, is not necessarily required where a public employee becomes ineligible or unqualified for continued employment (Matter of New York State Off. of Children & Family Servs. v Lanterman, 14 NY3d 275 [2010]; Matter of Felix v New York City Dept. of Citywide Admin. Servs., 3 NY3d 498 [2004]). In Felix (id.), the Court of Appeals distinguished between conduct that renders an employee ineligible to continue employment (i.e., failure to maintain a residence in the City as required by the City Code) with conduct constituting misconduct. Only the latter is subject to pretermination review pursuant to the Civil Service Law. Similarly, in Lanterman (supra), the Court of Appeals determined that because a teacher and counselor lost certain professional certifications explicitly required by statute, they were no longer qualified to hold their positions and were thus not “disciplined” as the term was defined in their collective bargaining agreements.
The issue presented in this CPLR article 78 proceeding is whether respondent Chief Krokoff s determination to summarily terminate petitioner based on his failure to maintain a valid New York State driver’s license was made in violation of lawful procedure, affected by an error of law or was arbitrary and capricious or an abuse of discretion (CPLR 7803; Matter of Stolzman v New York State Dept. of Transp., 68 AD3d 1331 [2009]). Petitioner contends that the maintenance of a valid New York State license is not a defined “minimum qualification” of employment as a police officer in the City of Albany. Respondent claims that the job specification clearly provides that officers must maintain a valid license in order to be able to perform their job. Notably, “judicial review of an administrative determination is limited to the record before the agency and proof outside the administrative record should not be considered” (Matter of Piasecki v Department of Social Servs., 225 AD2d 310, 311 [1996]).
Pursuant to the City of Albany’s Civil Service Rules, the City’s Municipal Civil Service Commission is responsible for preparing and maintaining class specifications for all positions in the clas *796 sified service. Once adopted and filed, these rules have the force and effect of law (Civil Service Law § 20; Matter of Jandrew [County of Cortland], 84 AD3d 1616, 1619 [2011]). In the “Police Officer” class specification,[2] the Commission establishes the “Distinguishing Features of the Class”; the “Typical Work Activities”; the “Full Performance Knowledge, Skills, Abilities and Personal Characteristics”; and the “Minimum Qualifications” for the class. The defined “Minimum Qualifications” for the class are “[graduation from high school, or possession of a high school equivalency or comparable diploma as described in Section 58 of the Civil Service Law.” Among the express “Full Performance Knowledge, Skills, Abilities and Personal Characteristics” standards is the “[a]bility to operate an automobile.” Petitioner contends that because the possession of a valid driver’s license is not a defined “minimum qualification” of the class, respondents had no legal basis for its determination to summarily terminate him.
Respondents concede that possession of a valid New York State driver’s license is not a “minimum qualification” defined in the specification for “police officer” in the City of Albany. Rather, the only “minimum qualification” for the position is, “Graduation from high school, or possession fo a high school equivalency or comparable diploma.”
Respondent’s Personnel Officer submits an affidavit wherein she explains that pursuant to guidance from the State Department of Civil Service, such a provision is improper because, “the minimum qualifications set forth in a job specification should only set forth ‘[e]ducation, training, and/or experience requirements established to give reasonable assurance that all candidates certified for appointment can satisfactorily perform the essential duties of the position of appointment’ ”[3] (Lyons affidavit ¶ 12).
*797 As noted, above, the “Full Performance” category includes the “ability to operate an automobile.” The question presented is whether this specification provides that a police officer must maintain a valid driver’s license as a qualification of employment. The court agrees with respondents that in order to operate an automobile one necessarily must have a valid driver’s license. Although this standard was included in the “Full Performance” category, it suffices to define the holding of a driver’s license as a requirement for police officers in the City of Albany.
As in Lanterman, Felix, and Stolzman, the question presented here does not implicate issues of job performance, misconduct or competency. Rather, an officer’s ability to operate a vehicle legally (i.e., with a valid license) is a defined standard that is not related to job performance. Once an officer loses his license, he or she is no longer eligible to perform his job. Whether that officer has engaged in misconduct or failed to competently perform is not at issue. In this court’s view, the maintenance of a valid driver’s license is thus a qualification of employment as a police officer in the City of Albany. As such, respondent’s termination of petitioner without a hearing was not arbitrary, capricious, contrary to law or a violation of due process.
Chief Krokoff has represented that since he became Chief of Police on July 29, 2010 no other police officer has been similarly situated to petitioner insofar as not having a valid driver’s license. Petitioner has not demonstrated otherwise. As such, the court finds no basis for petitioner’s disparate treatment claim.
Accordingly, based on the foregoing, it is ordered and adjudged that the petition is denied without costs.

. In the letter, petitioner asserts that he is “reserving all of [his] rights under the collective bargaining agreement” but he does not provide a copy of such agreement. Whether this dispute is arbitrable is not before the court (compare Matter of New York State Off. of Children & Family Seros, v Lanterman, 14 NY3d 275 [2010]; Matter of Jandrew [County of Cortland], 84 AD3d 1616 [2011]).

. Whether referred to as a “job specification” or a “class specification” is not controlling as to the issue presented here. The specifications are titled “Police Officer” and begins with “Distinguishing Feature of the Class” (see exhibit E annexed to petition).

. This is the definition for the term “minimum qualifications” set forth in the New York State Department of Civil Service State Personnel Management Manual (Cryocuff affidavit, exhibit A). In this court’s view, the City’s interpretation of the manual is incorrect inasmuch as the definitional categories of “training and/or experience” would certainly embrace a requirement that an officer hold a valid New York State driver’s license. Indeed, as discussed in Matter of Stolzman v New York State Dept. of Transp. (68 AD3d 1331 [2009]), the State Civil Service Classification Standards require, as a minimum qualification, that a bridge repair mechanic have a commercial driver’s license.