Matter of O'Reilly v Board of Educ. of the City Sch. Dist. of the City of N.Y. (2023 NY Slip Op 00957)

Matter of O'Reilly v Board of Educ. of the City Sch. Dist. of the City of N.Y.

2023 NY Slip Op 00957

Decided on February 21, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 21, 2023

Before: Kapnick, J.P., Webber, Friedman, Gesmer, Singh, JJ. 

Index No. 161040/21, 160017/21, 160353/21, 161076/21 Appeal No. 16688-16689-16690-16691 Case No. 2022-00684, 2022-00949, 2022-01398, 2022-01703 

[*1]In the Matter of Christine O'Reilly, Petitioner-Appellant,
v
The Board of Education of the City School District of the City of New York et al., Respondents-Respondents.
In the Matter of Lucia Jennifer Lanzer, Petitioner-Appellant,
v
The Board of Education of the City School District of the City of New York et al., Respondents-Respondents.
In the Matter of Ingrid Romero, Petitioner-Appellant,
v
The Board of Education of the City School District of the City of New York et al., Respondents-Respondents.
In the Matter of Elizabeth Loiacono, Petitioner-Appellant,
v
The Board of Education of the City School District of the City of New York et al., Respondents-Respondents.

Jimmy Wagner, Brooklyn, for appellants
Hon. Sylvia O. Hinds-Radix, Corporation Counsel, New York (Jesse A. Townsend of counsel), for respondents.

Order and judgment (one paper), Supreme Court, New York County (Arlene P. Bluth, J.), entered January 20, 2022, which granted respondents' motion to dismiss petitioner Christine O'Reilly's petition to annul the determination to place her on leave without pay and to vacate a September 10, 2021 arbitration award (Impact Award), order and judgment (one paper), same court (Lyle E. Frank, J.), entered on or about February 2, 2022, which denied petitioner Lucia Jennifer Lanzer's petition seeking the same relief, order and judgment (one paper), same court and Justice, entered February 2, 2022, which denied petitioner Ingrid Romero's petition seeking the same relief, and judgment (denominated an order), same court (Laurence L. Love, J.), entered April 13, 2022, denying petitioner Elizabeth Loiacono's petition seeking the same relief, each of which dismissed these hybrid proceedings brought pursuant to CPLR articles 75 and 78, affirmed, without costs.
We are asked on this appeal to decide whether tenured public school teachers are bound by the results of an arbitration initiated by their union, the United Federation of Teachers (UFT), pursuant to Civil Service Law § 209 to resolve an impasse over the implementation of the COVID-19 vaccine mandate. The September 10, 2021 Impact Award, which petitioners challenge in this hybrid article 75/ article 78 proceeding, established a procedure for handling requests for religious and medical exemptions. The article 75 claims were properly dismissed, as petitioners lack standing to challenge the Impact Award and failed to join UFT as a necessary party. The article 75 claims also fail on the merits. As to the article 78 claims, petitioners are unable to show that DOE made an error of law or acted irrationally.
This dispute arises from the vaccine mandate applicable to DOE employees for the 2021-2022 school year. The mandate was originally issued on August 24, 2021 by the Commissioner of the New York City Department of Health and Mental Hygiene (Health Commissioner). At that time, no vaccine had been fully approved for children under 16. The Health Commissioner's order required "all DOE staff" and other employees of the City and DOE contractors who work in person inside a school building to "provide proof to their employer no later than September 27, 2021, or prior to beginning employment" that they were fully vaccinated or in the process of becoming so. The Health Commissioner found "that a public health emergency within New York City continues, and that it is necessary for the health and safety of the City and its residents" to require full vaccination.
As Supreme Court properly found in each proceeding, the requirement that every DOE employee be vaccinated against COVID-19 — imposed by the vaccine mandate underlying these proceedings, the validity of which petitioners do not challenge here — is a "qualification of employment unrelated to job performance, misconduct, or competency" (Broecker v New York City Dept. [*2]of Educ., 585 F Supp 3d 299, 318 [ED NY 2022]; see Matter of Beck-Nichols v Bianco, 20 NY3d 540, 558-559 [2013]; see also We The Patriots USA, Inc. v Hochul, 17 F4th 266, 287 [2d Cir 2021], clarified 17 F4th 368 [2d Cir 2021], cert denied  US , 142 S Ct 2569 [2022]).
UFT sought to negotiate the mandate's implementation with the DOE pursuant to their "mutual obligation" to "confer in good faith with respect to wages, hours, and other terms and conditions of employment," since the mandate was not part of the collective bargaining agreement (CBA) then in force (Civil Service Law § 204[3]; see Matter of Roma v Ruffo, 92 NY2d 489, 494 [1998]). These negotiations included, for example, UFT's request for religious and medical accommodations. On September 1, 2021, UFT submitted a declaration of impasse to the State Public Employee Relations Board due to several unresolved issues, including placement of unvaccinated employees on leave without pay. As required by the Civil Service Law, the Public Employment Relations Board appointed a mediator, who spent several days attempting to resolve the dispute (see Civil Service Law § 209[3][a]). When the UFT and DOE continued to disagree on many issues, the parties agreed to arbitrate those issues before their former mediator (see Civil Service Law § 209[2], [3]).
On September 10, 2021, the arbitrator issued the Impact Award. He noted that the mandate "did not expressly provide for exceptions or modifications for those with any medical counterindications to vaccination or sincerely-held religious objections to inoculation." He set an expedited review process as "an alternative to any statutory reasonable accommodation process," effective immediately, but applicable "only to ... religious and medical exemption requests" and to "medical accommodation requests" for off-site or remote work "where an employee is unable to mount an immune response" after vaccination "due to preexisting immune conditions." The Impact Award required exemption applications to be filed by September 20, 2021, set standards for approvals and procedures for expedited hearings, and allowed temporary relief while proceedings were pending.
Under the Impact Award, an employee granted an exemption or accommodation would be permitted to remain on the payroll, but would not be allowed "to enter a school building while unvaccinated, as long as the vaccine mandate is in effect," and "may be assigned to work outside of a school building . . . to perform academic or administrative functions . . . " However, as relevant here:
"Any unvaccinated employee who has not requested an exemption ... or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with [procedures set forth] below. Placement [*3]on leave without pay for these reasons shall not be considered a disciplinary action for any reason"(emphasis added).
Employees placed on leave without pay continued to be eligible for health insurance, but were prohibited from engaging in gainful employment during the leave period. If they became vaccinated during the leave period and provided proof by November 30, 2021, they would have a right of return to the same school within one week of submitting proof.
Between September 28 and October 29, 2021, employees on leave without pay could opt to "separate" from the DOE by filling out a form "which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process." If choosing this option, these employees would be "deemed to have resigned involuntarily . . . for non-disciplinary reasons" and "shall continue to be eligible for health insurance through September 5, 2022, unless . . . eligible . . . from another source".
Alternatively, between November 1 and 30, 2021, employees on leave without pay could opt to extend their leave and retain their benefits by executing a different form "which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process." Under this option, employees "shall continue to be eligible for health insurance through September 5, 2022." If they became vaccinated and sought to return, giving the DOE notice before September 5, 2022, they "shall have a right to return to the same school as soon as is practicable" within two weeks. However, employees who extended leave but "have not returned by September 5, 2022, shall be deemed to have voluntarily resigned." "Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under" either option.
On September 15, 2021, the Health Commissioner issued an updated vaccine mandate, finding the same "public health emergency" as before, and again requiring all "DOE staff" and employees of other agencies, charter schools, and contractors, to "provide proof of vaccination" to their respective employers "[n]o later than September 27, 2021, or prior to beginning employment." The updated mandate noted the City's commitment to "safe, in-person learning in all pre-school to grade 12 schools," which serve many students too young to be vaccinated. It also added a new provision: "Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law." In addition, it extended the deadline to October 1, 2022.
Petitioners are similarly situated teachers employed by DOE. All received notification by email that they were being placed on Leave Without Pay (LWOP) status because they were not in compliance with DOE's COVID-19 Vaccine Mandate. They were informed that they could [*4]not report to their school sites as of Monday, October 4, and that, in order to return to work, they were required to upload proof of having received the first vaccine shot and "E-sign the attestation stating that you are willing to return to your worksite within seven calendar days of submission." The notifications also summarized the options for separation and leave extensions. Petitioners, with the exception of Loiacono, did not submit proof of vaccination or request religious or medical exemptions.
Loaicano did request an exemption. Her email stated that she was being placed on LWOP status "after the independent arbitrator . . . denied your appeal for a medical or religious exemption," effective "the first work day after you received the notification from the arbitrator." In all other respects, her notification was identical to that of the other petitioners.
As a threshold matter, we reject the dissent's assertion that only the legislature has the authority to impose a vaccine mandate as a condition of employment. The cases cited by the dissent do not support the proposition that UFT and respondents may not, through arbitration pursuant to the Civil Service Law, resolve disputes as to how best to protect school communities from COVID-19. The dissent acknowledges that petitioners' article 75 claim should be dismissed yet minimizes that it was UFT that declared an impasse over the vaccine requirements and arbitrated the issues on behalf of its union members.
Petitioners' claims under CPLR article 75, that the arbitrator acted in excess of jurisdiction and in violation of public policy, fail not only on the merits but also due to petitioners' lack of standing. When a union represents employees during arbitration, only that union — not individual employees — may seek to vacate the resulting award (see Matter of Moreira-Brown v New York City Bd. of Educ., 288 AD2d 21 [1st Dept 2001]). Petitioners have not claimed or shown that UFT breached its duty of fair representation (see id.). Neither, as in the cases cited by petitioners, does any provision of the CBA allow petitioners to represent themselves (see Matter of Case v Monroe Community Coll., 89 NY2d 438, 442-443 [1997]; Matter of Diaz v Pilgrim State Psychiatric Ctr. of State of N.Y., 62 NY2d 693, 695 [1984]).
Petitioners also failed to join UFT as a party. UFT advocated successfully for the exemptions, accommodations, and extended benefits for teachers otherwise unwilling to be vaccinated, all of which were prescribed in the Impact Award. Accordingly, UFT would be adversely impacted by a judgment favorable to petitioners and is thus a necessary party (CPLR 1001[a]; see City of New York v Long Is. Airports Limousine Serv. Corp., 48 NY2d 469, 475-476 [1979]). Because the limitations period for article 75 proceedings has expired, any action brought now against UFT would be untimely (see CPLR 7511[a]; Matter of Case, 89 NY2d at 443).
Additionally, the arbitrator's authority did not arise [*5]from the terms of the existing CBA or from provisions of the Education Law governing disciplinary proceedings but was instead based on the Civil Service Law. Accordingly, petitioners, who were not parties to the arbitration, cannot challenge the Impact Award because they cannot show that the arbitrator "exceeded his power" (CPLR 7511[b][1][iii], [2][ii]; see also Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, 14 NY3d 119, 123 [2010] [the petitioner must show that award "clearly exceeds a specifically enumerated limitation on the arbitrator's power" (internal quotation marks omitted)]).
Petitioners' argument that the Impact Award violated public policy, by allowing unilateral placement of tenured teachers on leave without pay for failure to prove vaccination status and directing that it "not be considered a disciplinary action for any reason," was properly rejected. Specifically, petitioners' placement on leave for failure to prove vaccination, a condition of employment, is "unrelated to job performance, misconduct or competency" and does not constitute "teacher discipline" (Matter of Beck-Nichols, 20 NY3d at 558-559; see Matter of Felix v New York City Dept. of Citywide Admin. Servs., 3 NY3d 498, 505 [2004]; Matter of Koutrous v Department of Educ. of the City of N.Y., 129 AD3d 434, 435 [1st Dept 2015]). Therefore, contrary to petitioners' contention and the dissent's position, Education Law § 3020 (Discipline of teachers) and § 3020-a (Disciplinary procedures and penalties) "are inapplicable inasmuch as they address issues relating to a teacher's competency and the applicable disciplinary procedures and penalties attendant thereto" (Matter of O'Connor v Board of Educ. of City School Dist. of City of Niagara Falls, 48 AD3d 1254, 1255 [4th Dept 2008], lv dismissed 10 NY3d 928 [2008]). Teacher discipline is not the issue raised in these proceedings or on this appeal.
The dissent asserts that "the issue raised is whether the vaccine mandate could be imposed (whether through collective bargaining or through arbitration) upon tenured teachers as a new, non statutory condition of employment that if, not satisfied by a tenured teacher, may result in that teacher's being summarily placed on unpaid leave — and ultimately deemed to have voluntarily resigned — without first receiving due process as prescribed by Education Law § 3020-a." The dissent then asserts that there is "an unbroken line of authority from the Court of Appeals [that] requires us to answer the foregoing question in the negative." We disagree, because, as just discussed, Education Law § 3020-a is not applicable here since this case does not involve any disciplinary actions or incompetent performance by any of the petitioners. Therefore, the DOE did not act unlawfully or irrationally by implementing the Impact Award and placing petitioners on LWOP without a disciplinary hearing.
The dissent then cites to a string of cases along with parentheticals to support [*6]its position that the legislature has the sole authority to create a new vaccine requirement for tenured teachers. However, each of the four Court of Appeals decisions cited by the dissent addresses entirely different questions than those raised before us in this appeal. Moreover, the selected quotations have been taken out of context and do not accurately represent the issues that were decided in those cases.
Specifically, Matter of Springer v Board of Educ. of City School District of City of N.Y. (27 NY3d 102, 104 [2016]), addresses the issue of "whether a tenured school teacher who resigns from teaching, and then subsequently applies and is hired to teach at another school, is automatically entitled to tenure in the new position." In fact, in Springer, the Court held that the teacher did not strictly comply with the regulation to withdraw his resignation and was not reinstated with tenure. Ricca v Board of Educ. of City School Dist. of City of N.Y. (47 NY2d 385, 388-389 [1979]), involves a board of education's delay in formally appointing a qualified teacher to an available position and how that affected his obtaining tenure. Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist. (81 NY2d 446, 449-450 [1993]), addresses a situation where a teacher requested that her resignation be rescinded after she later learned that she had actually acquired tenure by estoppel at the time she had tendered her resignation. At issue in Matter of Mannix v Board of Education of the City of N.Y. (21 NY2d 455 [1968]), was the failure of a tenured teacher to fulfill graduate course requirements during her otherwise satisfactory probationary period.
None of these cases hold that the government and UFT may not, through arbitration, respond to an unexpected and life threatening health crisis by changing the conditions of employment for tenured public school teachers throughout New York City. Most significantly, the cases relied upon by the dissent dealt with unilateral actions by the Board of Education. They did not address the result of impasse arbitration sought by teachers through their union, pursuant to the Civil Service Law, concerning the terms of their employment.
Additionally, contrary to the dissent's opinion, Broecker, while not binding, is nonetheless instructive and persuasive authority. The plaintiffs in Broecker were also tenured teachers employed by DOE who sought to challenge the enforcement of the same vaccine mandate and leave policy at issue here. They sought, among other relief, to be restored to the DOE payroll after having been placed on LWOP for their failure to comply with the vaccine mandate. After considering the parties' arguments and analyzing the issues, the District Court held "that the Vaccination Mandate is a lawful condition of employment and, thus, upon termination, Plaintiffs have been provided constitutionally adequate process under their applicable CBAs as affected by the relevant Arbitration Awards or agreements [*7]and all relevant state statutes" (Broecker, 585 F Supp 3d 299, 314). The fact that Broecker does not "discuss, or even cite, the above-cited Court of Appeals authority — Springer, Gould, Ricca, and Mannix," as the dissent points out, is completely reasonable, because, as previously noted, these cases are not on point.
The dissent's comparison of the treatment of petitioners here to the treatment of the tenured teachers who are petitioners in the case of Kambouris v New York City Dept. of Educ. Of City of New York, (2022 NY Slip Op 22400 [Sup Ct, Kings County, Dec. 19, 2022]) is misplaced.[FN1] In Kambouris, a non binding though well-reasoned decision from the Supreme Court in Brooklyn, the petitioners were accused of submitting fraudulent vaccination cards to prove their compliance with the vaccine mandate. As the court there determined, that action "could clearly be characterized as misconduct, if not a crime. While petitioners, in such instance, would have also failed to satisfy a condition of employment, that failure would be inextricably intertwined with an act of misconduct, thus triggering the disciplinary procedure requirements of Education Law §§ 3020 and 3020-a" (Kambouris, 2022 NY Slip Op 22400 at *5). As we have continued to emphasize, failure to comply with conditions of employment, which is the issue in this case, does not constitute misconduct, and, therefore, does not implicate Education Law §§ 3020 and 3020-a.
Furthermore, due process mandates only notice and some opportunity to respond (see Matter of Beck-Nichols v Bianco, 20 NY3d at 559). Because petitioners were given the opportunity to submit proof of vaccination, request religious or medical exemptions and accommodations if immunocompromised, or opt for extended benefits and severance on more favorable terms, their due process rights were not violated [FN2] (see Matter of Felix, 3 NY3d at 506). Petitioners were also ably represented by their union in the mediation and arbitration that arose from the vaccine mandate. Moreover, neither petitioners nor the dissent identify any triable issues of fact that could be raised in a hearing that have not already been decided by the Impact Award (see Matter of Mathew v Coler Goldwater Specialty Hospital & Nursing Facility, 103 AD3d 567 [1st Dept 2013]; Matter of Moogan v New York State Dept. of Health, 8 AD3d 68, 69 [1st Dept 2004], lv denied 3 NY3d 612 [2004]; Matter of Naliboff v Davis, 133 AD2d 632, 633 [2nd Dept 1987]).
All concur except for Friedman, J. who dissents in part in a memorandum as follows:

      

FRIEDMAN, J. (dissenting in part) Petitioners in the proceedings giving rise to this appeal are veteran tenured teachers in the New York City public schools, some of whom have been employed by the school system for more than 20 years. The question presented by petitioners' appeal is whether they could lawfully be summarily placed by respondent New York City Department of Education (DOE)[FN3] on unpaid leave, in contemplation of eventual [*8]dismissal, for failing to comply with a newly created "baseline employment eligibility requirement[] or qualification[]" (as described by DOE) that is not prescribed by the statutes governing tenure for public school teachers (Education Law, article 61, § 3001 et seq.) and did not exist when petitioners were granted tenure. The new "eligibility requirement[]" at issue — the mandate that DOE employees submit proof of having received the COVID-19 vaccine, subject to specified terms for obtaining an exemption — was imposed, not by the legislature, but by an arbitrator selected, pursuant to Civil Service Law § 209, to resolve an impasse between DOE and the United Federation of Teachers (UFT) in the negotiation of the terms under which UFT members employed by DOE would be required to submit to the vaccine.
This appeal does not place in question either the wisdom of the vaccine mandate imposed by the arbitration award or the fairness of the terms of the award governing the granting of exemptions from the mandate. Indeed, the appeal does not even place in question DOE's right, after negotiation with UFT or (as here) after an arbitration resolving a negotiation impasse, to impose a new vaccine mandate upon tenured teachers as a work rule and to subject noncompliant teachers to discipline after affording them due process as prescribed by statute (see Education Law §§ 3020, 3020-a).[FN4] Nor have petitioners placed at issue DOE's right to exclude them from its school buildings based on their unvaccinated status. Rather, the issue raised is whether the vaccine mandate could be imposed (whether through collective bargaining or through arbitration) upon tenured teachers as a new, nonstatutory condition of employment that, if not satisfied by a tenured teacher, may result in that teacher's being summarily placed on unpaid leave —and ultimately deemed to have voluntarily resigned — without first receiving due process as prescribed by Education Law § 3020-a.
In my view, an unbroken line of authority from the Court of Appeals requires us to answer the foregoing question in the negative (see Matter of Springer v Board of Educ. of City School District of City of N.Y., 27 NY3d 102, 108 [2016] ["a tenured teacher has a protected property interest in his or her position and right to retain that position absent discharge in accordance with Education Law § 3020-a"] [internal quotation marks and brackets omitted], quoting Matter of Gould v Board of Educ. of Sewanhaka Cent. High School Dist., 81 NY2d 446, 451 [1993]; Ricca v Board of Educ. of City School Dist. of City of N.Y., 47 NY2d 385, 392 [1979] ["a school district may not validly increase the requirements for tenure established by the State"]; Matter of Mannix v Board of Educ. of City of N.Y., 21 NY2d 455, 459 [1968] ["no act of a board of education could effect a method of bypassing the tenure statute . . . The tenure terms . . .. can be changed by the Legislature but never by a board of education"] [internal quotation [*9]marks omitted]; see also 16B McQuillan, Municipal Corporations § 46:69 [3d ed., July 2022 update] ["While statutory tenure terms can be changed by the legislature . . . , they cannot be changed by a board of education"] [citing Ricca and Mannix]). Even if disobedience of the vaccine mandate would still result in dismissal after petitioners have been afforded their procedural rights under Education Law § 3020-a, petitioners would be entitled to recover compensation for the period from the time they were summarily placed on unpaid leave until the disciplinary process reaches its conclusion (cf. Matter of Marland v Ambach, 59 NY2d 711, 713 [1983] [a court could award "back pay to a probationary teacher . . . who has been denied her contractual procedural rights affecting her ability to contest her discharge from employment"]).[FN5]
The majority, in denying the article 78 petitions, dismisses as inapposite the above-cited Court of Appeals authority establishing that "a tenured teacher has a protected property interest in his or her position and right to retain that position absent discharge in accordance with Education Law § 3020-a" (Springer, 27 NY3d at 108 [internal quotation marks and brackets omitted], quoting Gould, 81 NY2d at 451) and that a school district does not have the power to create new conditions of employment and apply them retroactively to tenured teachers (see Ricca, 47 NY2d at 392; Mannix, 21 NY2d at 459). The majority seeks to justify its refusal to follow this binding case law by invoking the undeniable need to "respond to an unexpected and life-threatening health crisis." This is an exercise in misdirection, inasmuch as affording tenured teachers their statutory due process rights before terminating their employment would not interfere in any way with DOE's efforts to protect its students and employees from the virus. Again, DOE's right and duty to exclude unvaccinated teachers from its classrooms and school buildings is not at issue in these proceedings. Nor, to reiterate, do I question the propriety and necessity of the imposition of the vaccine mandate upon tenured teachers as a work rule. The sole question is whether DOE was entitled, in the absence of any statutory authority, to place these petitioners on unpaid leave, in contemplation of dismissal, in summary fashion, without going through the disciplinary process prescribed by Education Law § 3020-a. The pandemic may have necessitated excluding unvaccinated teachers from classrooms, but it did not somehow erase the precedents of the Court of Appeals addressing the due process to which tenured teachers are entitled before they may be terminated. The majority in effect holds that the pandemic did erase this body of law, thereby creating a troubling precedent under which DOE may utilize any public issue to eliminate the protections that tenured teachers have been granted by the legislature.[FN6]
The majority's affirmative answer to the foregoing question finds support in none of the [*10]state court decisions on which the majority relies. In each of the state cases cited by the majority in which termination of a tenured teacher for failure to satisfy a qualification for employment was held to be a nondisciplinary matter not subject to the procedural requirements of Education Law § 3020-a, the qualification or condition at issue had existed at the inception of the teacher's employment (see Matter of Beck-Nichols v Bianco, 20 NY3d 540, 549, 552, 555 [2013] [the three petitioners were terminated for failing to satisfy a residency requirement that had become effective on March 1, 1994, before any of them were hired]; Matter of Koutros v Department of Educ. of the City of N.Y., 129 AD3d 434, 435 [1st Dept 2015] [the petitioner was terminated for having failed to obtain "a proper teaching certificate"]; Matter of O'Connor v Board of Educ. of City School Dist. of City of Niagara Falls, 48 AD3d 1254, 1255 [4th Dept 2008], lv dismissed 10 NY3d 928 [2008] ["Petitioners were terminated from their employment based on their failure to comply with the residency policy set forth in the employment agreement signed by them"]).[FN7]
Ultimately, the only precedent to which the majority can turn for support is a nonbinding federal court decision that — ironically — relies on three of the very decisions that are now under review upon this appeal (see Broecker v New York City Dept. of Educ.,585 F Supp 3d 299, 316- 317 [ED NY 2022] [in holding that "vaccination is a lawful condition of employment" for DOE employees, including tenured teachers, the federal court cited in support the O'Reilly, Lanzer and Romero decisions of Supreme Court, New York County, which are now before this Court on appeal]). Broecker cites no other state case law bearing on the validity, under the Education Law, of the imposition of the vaccine mandate as a condition of employment for already-tenured teachers, nor does it discuss, or even cite, the above-cited Court of Appeals authority — Springer, Gould, Ricca and Mannix — that does bear on this question. Thus, in relying on Broecker, the majority essentially affirms the decisions under review based on the authority of those very decisions, dressed up in the garb of a federal citation. I submit that this manner of proceeding fails to fulfill this Court's obligation, in deciding an appeal, to consider questions of law de novo, rather than deferring to the resolution of those questions by the tribunal from which the appeal is taken.
Since, as a matter of New York law, petitioners are entitled to the process specified in Education Law § 3020-a, it is irrelevant that the manner in which DOE placed them on unpaid leave may have satisfied the less stringent requirements of due process under the federal constitution (see Marciano v de Blasio, 589 F Supp 3d 423, 436 [SD NY 2022] [whether the City of New York complied with a terminated police detective's procedural rights under the Administrative Code and the Patrol Guide had no bearing on [*11]the question of whether the City afforded him the "minimum" due process mandated by the federal constitution, which "need not be elaborate"] [internal quotation marks omitted]). The minimal constitutional standard of due process invoked by the majority applies where — unlike here — a tenured teacher fails to satisfy a condition of employment that existed when he or she received tenure, as was the case in Beck-Nichols (20 NY3d 540), the decision cited by the majority in this connection. Nor are petitioners' statutory procedural rights negated by DOE's position that the adverse actions against them are not "motivated by a punitive intent" (Monaco v New York Univ., 204 AD3d 51, 63 [1st Dept 2022] [internal quotation marks omitted]) and are unrelated to their job performance, misconduct or competency. However DOE chooses to characterize its reason for taking an adverse employment action, such a characterization cannot conjure into existence an authority, never delegated by the legislature, to impose upon tenured teachers a new condition of employment (as opposed to a work rule). Since the legislature has never authorized the imposition of the new condition upon tenured teachers (such as petitioners), that condition may lawfully be enforced against petitioners only as an ordinary work rule, through the procedural mechanisms prescribed by Education Law § 3020-a.
A logical flaw runs through the majority's opinion. The majority, following DOE's lead, repetitively intones the mantra that the placement of petitioners on unpaid leave is not a "disciplinary" matter but a matter of petitioners' failure to satisfy a "condition" of their employment, albeit a "condition" created years after they were granted tenure. However, even accepting arguendo DOE's position that its adverse action against petitioners had no disciplinary motivation, the lack of disciplinary intent does nothing to establish that the vaccine mandate was created in the manner requisite for a new "condition of employment" to be made applicable to teachers previously granted tenure. The Court of Appeals decisions I have previously discussed — Springer, Gould, Ricca, and Mannix — establish that new conditions of employment (to which the procedural safeguards of Education Law § 3020-a do not apply, as the majority frequently reminds us) cannot be applied to already-tenured teachers except by an act of the legislature. Thus, given that the vaccine mandate was not enacted by the legislature, that mandate — whether or not DOE regards it as a disciplinary matter, and regardless of the intent of the arbitrator who issued it — simply cannot lawfully be enforced against petitioners as a condition of employment, without affording them the due process prescribed by section 3020-a.[FN8] Before concluding, I will enumerate the points on which I concur with the majority. I concur in the affirmance of the denial of the article 75 petition, since I agree that petitioners lack standing to seek vacatur of the arbitration [*12]award and have failed to join as a respondent in this proceeding UFT, a necessary party in any proceeding challenging the arbitration award.[FN9] I also concur in the denial of the article 78 proceeding to the extent it seeks vacatur of the arbitration award or asserts a claim for breach of the collective bargaining agreement. Contrary to the majority's suggestion, there is no inconsistency between my concurrence on these points and my dissent on the primary issue raised by this appeal — the validity or invalidity of the imposition on tenured teachers of the vaccine mandate, not as a work rule, but as a condition of employment, to which tenured teachers' statutory procedural rights do not apply. Since, in the absence of statutory authority, DOE itself could not impose a new condition of employment upon tenured teachers, it follows that such a new condition could not be imposed on tenured teachers by the arbitration award. Accordingly, the arbitration award, whatever language it uses, cannot negate or override the statutory procedural rights that petitioners seek to vindicate in their respective article 78 petitions. To the extent the arbitration award purports to affect petitioners' rights as tenured teachers in a way that DOE itself does not have the power to do (such as by imposing a new condition of employment upon petitioners), the principle that petitioners, as UFT members, are bound by the result of an arbitration to which UFT was a party, does not apply. However, I note that the arbitration award itself nowhere describes the vaccine mandate it imposes as "a condition of employment" or as a requirement of "eligibility" for employment.
Finally, it should be noted that, upon these appeals, DOE, in arguing for the inapplicability of the procedures set forth in Education Law § 3020-a, has relied only on its position that the vaccine mandate is a condition of employment. In this Court, DOE has placed no reliance upon Education Law § 3020(4)(a), which permits DOE and UFT to "modify" the procedures of § 3020-a. Perhaps the reason that DOE has not invoked 3020(4)(a) on appeal (after having raised it before the motion courts) is that both § 3020 (entitled "Discipline of teachers") and § 3020-a (entitled "Disciplinary procedures and penalties") are addressed to matters of discipline, not to nondisciplinary "conditions of employment" (see Mem of Legis Rep of City of New York, 2002 McKinney's Session Laws of NY at 1726 ["UFT Disciplinary Provisions: This part (of the bill by which § 3020[4][a] was enacted) authorizes the City of New York and (UFT) to modify the current disciplinary procedures with an alternative process"]). Since the fundamental premise of DOE's position on these appeals is that the vaccine mandate is a "condition of employment," rather than a disciplinary matter, DOE could not rely, without contradicting itself, on the authority to modify disciplinary procedures conferred by § 3020(4)(a). Taking DOE at its word that the vaccine mandate is [*13]a "condition of employment," § 3020(4)(a) conferred no authority for imposing such a new "condition of employment" upon teachers previously granted tenure.
For the foregoing reasons, I would modify the judgments appealed from to grant the article 78 petitions solely to the extent of annulling DOE's placement of each petitioner on unpaid leave and reinstating each petitioner to his or her position of employment, without prejudice to DOE's option, if so advised, to commence disciplinary proceedings against each petitioner based on his or her failure to abide by the vaccine mandate as a work rule, and certainly without prejudice to DOE's right to continue to exclude petitioners from classrooms based on their failure to present proof of vaccination. To the extent the majority does otherwise, I respectfully dissent.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 21, 2023

Footnotes

Footnote 1: In the other case cited by the dissent (Board of Educ. of City School Dist. of City of New York v United Fedn. of Teachers, 2022 NY Slip Op 33351[U] [Sup Ct, NY County, Oct. 4. 2022]) for this proposition, the petition was denied as moot, as the teachers there were no longer on leave without pay.

Footnote 2: The dissent seems to be conflating the procedural rights of a criminal defendant, which derive from the United States and New York State Constitutions, with the more limited due process rights available in the administrative context.

Footnote 3: DOE is sued in these proceedings as "[t]he Board of Education of the City School District of the City of New York."

Footnote 4: Two of the appellate briefs submitted by petitioners state: "To be abundantly clear about the basis of this appeal, [petitioner] does not challenge and is not seeking to overturn the . . . [o]rder mandating vaccines for all DOE employees. . . . [Petitioner] seeks procedural due process for herself, not to undo the DOE order itself."

Footnote 5: There is no merit to the majority's suggestion that any procedural rights petitioners may have under Education Law § 3020-a are irrelevant because petitioners have not "identif[ied] any triable issues of fact" that could be raised in such a hearing. We do not deny a person his or her procedural rights just because, as a practical matter, there is little or no doubt about the outcome of the proceeding. Needless to say, a person who is observed committing a crime in public, and whose act is recorded on videotape, is still not adjudicated a wrongdoer until after he has been afforded due process. The majority seems to suggest that my use of this analogy "conflat[es] the procedural rights of a criminal defendant . . . with the more limited due process rights available in the administrative context." On the contrary, the purpose of the analogy is to illustrate the principle that, where a person is entitled to due process (of whatever kind) before receiving a negative sanction, his or her entitlement to that due process is not affected by the circumstance that, as a practical matter, the outcome of the proceeding may be a forgone conclusion.

Footnote 6: While the majority attempts to distinguish the Court of Appeals decisions on which I rely, the attempt falls flat. That the decisions were (obviously) not addressing new vaccine mandates imposed in response to a health crisis does not affect the applicability of the general principle they express, namely, that a new condition of employment cannot lawfully be imposed upon tenured teachers without action by the legislature. Inasmuch as that principle is applicable in a wide variety of factual contexts, the majority's recitation of the specific facts underlying the decisions on which I rely does nothing to advance the majority's position (contrary to that of the Court of Appeals) that a new condition of employment could be imposed on petitioners without legislative action. Nor may the cases I cite be cogently distinguished on the ground that they "did not address the result of impasse arbitration" pursuant to Civil Service Law § 209. The majority cites no authority, and offers no logical argument, that an impasse arbitration award may void statutory procedural rights of individual tenured teachers that could not have been voided either by DOE acting unilaterally or by agreement between DOE and UFT.

Footnote 7: Obviously far afield from the instant case is Matter of Felix v New York City Dept. of Citywide Admin. Servs. (3 NY3d 498 [2004]), in which the petitioner, a plant tender formerly employed by the Department of Citywide Administrative Services, was terminated for failing to comply with a residency requirement that had been enacted by the City Council in 1986, seven years before he was hired in 1993 (see id. at 501-502). Similarly distinguishable are Matter of Mathew v Coler Goldwater Specialty Hosp. & Nursing Facility (103 AD3d 567 [1st Dept 2013] [upholding the petitioner's termination as a respiratory therapist for failure to hold a "valid active license . . . , which was a minimum job requirement"]), Matter of Moogan v New York State Dept. of Health (8 AD3d 68 [1st Dept 2004], lv denied 3 NY3d 612 [2004] [upholding the petitioner's termination as an EMT based on the suspension of his EMT certification, such certification having been "a requirement for employment with the Fire Department"]), and Matter of Naliboff v Davis (133 AD2d 632, 633 [2d Dept 1987] [upholding the termination of three EMTs who allowed their EMT certifications to lapse, rendering them "no longer qualified for their positions"]).

Footnote 8: Anomalously, the majority allows DOE to treat petitioners — who have always been honest and forthright about their unvaccinated status — more harshly than tenured teachers accused of having submitted fake vaccination cards. Tenured teachers subject to such accusations recently have obtained injunctive and declaratory relief against being placed on leave without pay, or even being reassigned, "without the DOE first commencing disciplinary procedures pursuant to [Education Law] §§ 3020 and 3020-a," and have received an award of "any back pay withheld during the period they were placed on leave without pay" (Kambouris v New York City Dept. of Educ. of City of New York, 2022 NY Slip Op 22400, *6 [Sup Ct, Kings County Dec. 19, 2022]). In a different proceeding raising similar issues, DOE itself voluntarily reinstated the accused teachers to paid status (see Board of Educ. of City School Dist. of City of New York v United Fedn. of Teachers, 2022 NY Slip Op 33351[U] [Sup Ct, NY County Oct. 4, 2022]). While, as the majority notes, DOE's position that the vaccine mandate is a "condition" of employment was not challenged in these cases, the cases still highlight the harshness of DOE's treatment of the instant petitioners, forthright employees accused of no misconduct who are nonetheless being denied the due process the DOE affords to employees accused of fraudulent evasion of the vaccine mandate. Indeed, insofar as petitioners are being denied pay, they are being treated at least as harshly as teachers accused of felonious conduct, physical abuse of minors, and sexual offenses against minors, who may be placed on leave without pay under the collective bargaining agreement between DOE and UFT. 

Footnote 9: To be clear, I take the position that, whatever the intent behind the award may have been, the vaccine mandate cannot lawfully be enforced against petitioners as a "condition of employment," that is, without affording tenured teachers the procedural rights set forth in Education Law § 3020-a. I agree with the majority that petitioners, as nonparties to the arbitration, and in view of their failure to allege that UFT breached its duty of fair representation, or even to join UFT in this proceeding, lack standing to challenge the award through an article 75 proceeding. However, given that article 75 relief is not available to petitioners, it follows that they should be entitled to bring an article 78 proceeding against DOE to challenge the enforcement against them of an invalidly created new condition of employment.